J. Andrew Coombs (SBN 123881)
*andy@coombspc.com*
Nicole L. Drey (SBN 250235)
*nicole@coombspc.com*
J. Andrew Coombs, A. P. C.
517 East Wilson Avenue, Suite 202
Glendale, California 91206
Telephone: (818) 500-3200
Facsimile: (818) 500-3201

Attorneys for Plaintiff
Adobe Systems Incorporated

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA (SAN JOSE DIVISION)

| | |
|---|---|
| Adobe Systems Incorporated, | Case No. C08-1536 JW |
| Plaintiff, | DISCOVERY MATTER |
| v. | *EX PARTE* APPLICATION FOR LEAVE TO TAKE IMMEDIATE DISCOVERY PRIOR TO RULE 26(F) CONFERENCE; DECLARATIONS IN SUPPORT THEREOF |
| Alex Jackson, and Does 1 – 10, inclusive, | |
| Defendants. | |

Plaintiff Adobe Systems Incorporated ("Plaintiff") hereby applies, *ex parte,* to this Court, for issuance of an Order pursuant to Fed. R. Civ. P. 26(d) authorizing Plaintiffs to serve subpoenas on PayPal, Inc., eBay, Inc., and Google, Inc. pursuant to Fed. R. Civ. P. 45, for purposes of conclusively identifying, locating and serving with process Defendant Alex Jackson ("Defendant"), who operates under eBay seller ID "itsawayoflife" with email address is semisub@gmail.com.

This application is made in the interests of justice and pursuant to the Court's inherent equitable power to authorize discovery before the parties have met and conferred as provided in Federal Rules of Civil Procedure Rule 26(d).

1

2    In addition, Plaintiff respectfully requests that it be granted a sixty (60) day enlargement of

3    time within which to effect service of process within the Court's broad discretion pursuant to

4    Federal Rules of Civil Procedure Rule 6(b) to grant such an enlargement so long as the request is

5    made before the expiration of the period originally prescribed.

6    This *Ex Parte* Application is based upon the Memorandum of Points and Authorities, the

7    Declarations filed in support, including Exhibits attached hereto, the Complaint and any other

8    papers and records on file in this action and upon such additional evidence and arguments as may

9    be presented at or before the hearing on Plaintiff's application for an order granting leave to take

10   immediate discovery prior to the Rule 26(f) Conference and request for extension of time within

11   which to effect service of process pursuant to Rule 6(b).

12   This application is made *ex parte* without notice because Plaintiff has been unable to

13   identify and locate the Defendant, such relief is necessary in revealing the true identity and location

14   of the Defendant, and this litigation cannot proceed without the discovery requested in this

15   application.

16

17   DATED: July _11_, 2008                    J. Andrew Coombs, A Professional Corp.

18

19                                             By: _Nicole L Drey_

20                                                 J. Andrew Coombs
                                                   Nicole L. Drey
                                                   Attorney for Plaintiff Adobe Systems Incorporated

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**INTRODUCTION**                                                                            1

**FACTUAL AND PROCEDURAL BACKGROUND**                                                       1

**ARGUMENT**                                                                                3

I.      Plaintiff's Application Warrants Granting Leave to Take Immediate Discovery.        3

    A.      Plaintiff Has Identified the Defendant with Sufficient Specificity.       5

    B.      Plaintiff Has Described Its Efforts to Identify the Elusive Defendant.    5

    C.      Plaintiff's Action For Copyright and Trademark Infringement Would
            Withstand a Motion to Dismiss.                                        6

    D.      Plaintiff Has Justified the Discovery.                                   9

    E.      Plaintiff Has Shown Good Cause.                                          10

II.     Plaintiff Demonstrates Cause Permitting an Enlargement of Time Within Which to
     Effect Service of Process.                                                       12

**CONCLUSION**                                                                             14

**DECLARATION OF CHRISTOPHER D. JOHNSON**                                                  15

**DECLARATION OF NICOLE L. DREY**                                                          18

# TABLE OF AUTHORITIES

**CASES**

ABKCO Music, Inc. v. Stellar Records, Inc., 96 F.3d 60 (2d Cir. 1996) ........................ 10

AMF, Inc. v. Sleekcraft Boats, 599 F.2d 341 (9th Cir. 1979)............................................ 8-9

Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435 (9th Cir. 1994),
*cert. denied* 513 U.S. 1184, 130 L. Ed. 2d 1129, 115 S. Ct. 1176 (1995).......................... 7

Benham Jewelry Corp. v. Aron Basha Corp.,
1997 U.S. Dist. LEXIS 15957 (S.D.N.Y. Oct. 14, 1997).................................................. 10

Best Western International, Inc. v. John Doe,
2006 U.S. Dist. LEXIS 56014 (Ariz. July 25, 2006)....................................................... 11-12

Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,
403 U.S. 388, 91 S. Ct. 1999 (1971) ............................................................................... 4

Black Hills Jewelry Manufacturing Co. v. Gold Rush, Inc., 633 F.2d 746 (8th Cir. 1980)............. 11

Columbia Ins. Co. v. Seescandy.com, 185 F.R.D. 573 (N.D. Cal. 1999) ................................ 1, 4-5, 8

Dean v. Barber, 951 F.2d 1210 (11th Cir. 1992)............................................................... 4

D.C. Comics, Inc. v. Bobtron Int'l, Inc., 1990 U.S. Dist. LEXIS 9107 (S.D.N.Y. July 25, 1990).... 7

Efaw v. Williams, 473 F.3d 1038 (9th Cir. 2007)............................................................ 13-14

Entertainment Tech. Corp. v. Walt Warner Imagineering,
2003 U.S. Dist. LEXIS 19832 (E.D. Pa. Oct. 2, 2003) ..................................................... 10

Evans v. Unknown Names of Department of Corrections Officers,
2007 U.S. Dist. LEXIS 3071 (N.D. Cal. January 3, 2007)................................................... 1

Gillespie v. Civiletti, 629 F.2d 637 (9th Cir. 1980) ....................................................... 3-4

Grupo Gamesa S.A. v. Dulceria El Molino Inc.,
1996 U.S. Dist. LEXIS 13193 (C.D. Cal. Apr. 9, 1996) .................................................... 11

Health Ins. Ass'n of Am. v. Novelli, 211 F. Supp. 2d 23 (D.D.C. 2002) ............................... 10

Helene Curtis Industries v. Church & Dwight Co., 560 F.2d 1325 (7th Cir. 1977)..................... 11

Henderson v. United States, 517 U.S. 654, 116 S. Ct. 1638, 134 L. Ed. 2d 880 (1996)............... 13

Highfields Capital Mgmt. L.P. v. John Doe, 385 F. Supp. 2d 969 (N.D. Cal. 2005)...................... 4

International Kennel Club v. Mighty Star, Inc., 846 F.2d 1079 (7th Cir. 1988)......................... 10-11

1   Johnson Controls, Inc. v. Phoenix Control Systems, Inc., 886 F.2d 1173 (9th Cir. 1989) ............... 7

2   Kimberlite Corporation v. Does, 2008 U.S. Dist. LEXIS 43071 (N.D. Cal. June 2, 2008)............... 1

3   Levi Strauss & Co. v. Blue Bell, Inc., 778 F.2d 1352 (9th Cir. 1985) ................................. 8

4   M2 Software, Inc. v. Madacy Entm't, 421 F.3d 1073 (9th Cir. 2005)..................................8-9

5   Maclin v. Paulson, 627 F.2d 83 (7th Cir. 1980) ................................................... 4

6   Mann v. Am. Airlines, 324 F.3d 1088 (9th Cir. 2003)....................................... 13

7   Omega Importing Corp. v. Petri-Kine Camera Co., 451 F.2d 1190 (2d Cir. 1971)......... 11

8   Oscar v. University Students Co-op. Assoc., 965 F.2d 783 (9th Cir. 1992) ..................... 6

9   PepsiCo, Inc. v. Reyes, 70 F. Supp. 2d 1057 (C.D. Cal. 1999).......................... 11

10  PepsiCo, Inc. v. Torres, 1993 U.S. Dist. LEXIS 17588 (C.D. Cal. Feb. 18, 1993) ......... 11

11  Porsche Cars North America Inc. v. Manny's Porshop Inc., 972 F. Supp. 1128 (N.D. Ill. 1997)... 11

12  Qwest Comm. Int'l, Inc. v. WorldQuest Networks, Inc., 213 F.R.D. 418 (D. Colo. 2003)............. 10

13  Rocker Mgt. LLC v. John Does, 2003 U.S. Dist. LEXIS 16277 (N.D. Cal. May 29, 2003) ............. 4

14  Semitool, Inc. v. Tokyo Electron Am., Inc., 208 F.R.D. 273 (N.D. Cal. 2002)..................... 10-11

15  Shaw v. Lindheim, 919 F.2d 1353 (9th Cir. 1990).................................................. 7

16  Taylor Corp. v. Four Seasons Greetings, LLC, 315 f.3d 1039 (8th Cir. 2003)............................. 10

17  Twentieth Century Fox Film Corp. v. MCA, Inc., 715 F.2d 1327 (9th Cir. 1983)........................... 7

18  UMG Recordings, Inc. v. Does, 2006 U.S. Dist. LEXIS 32821 (N.D. Cal. Mar. 6, 2006) ............. 12

19  Valentin v. Dinkins, 121 F.3d 72 (2d Cir. 1997).................................................. 4

20  Vigil v. Walt Disney Co., 1995 U.S. Dist. LEXIS 15560 (N.D. Cal. Oct. 16, 1995) ....................... 8

21  Wakefield v. Thompson, 177 F.3d 1160 (9th Cir. 1999) ......................................... 3

22  Yokohama Tire Corp. v. Dealers Tire Supply, Inc., 202 F.R.D. 612 (D. Ariz. 2001) ..................... 10

23  **STATUTES**

24  15 U.S.C. § 1115(a)................................................................................ i

25  17 U.S.C. § 410(c)................................................................................ 7

26  Fed. R. Civ. P. 4(m)............................................................................3, 12-13

27

28

Fed. R. Civ. P. 6(b)..................................................................................ii, 12-13

Fed. R. Civ. P. 26(d).....................................................................................i

Fed. R. Civ. P. 26(f) ...........................................................................ii, 2, 9, 12

Fed. R. Civ. P. 45 .....................................................................................i, 2

**OTHER AUTHORITIES**

4 Nimmer § 14.06[A], at 14-103 ..................................................................... 10

**INTRODUCTION**

Defendant Alex Jackson ("Defendant") is a trafficker of unauthorized copies of copyrighted software who will be rewarded for concealing his identity to avoid responsibility for his illegal actions if this Application is not granted. Plaintiff Adobe Systems Incorporated ("Plaintiff") has met and exceeded the applicable burden by employing significant effort to identify and locate this infringer, without success. The expedited discovery sought in this application is justified and good cause exists as Plaintiff will be without recourse against Defendant absent the relief sought herein.

Where the tortious conduct occurs through online activity, "[s]ervice of process can pose a special dilemma for plaintiffs." Columbia Ins. Co. v. Seescandy.com, 185 F.R.D. 573, 577 (N.D. Cal. 1999). The Internet enables tortfeasors "to commit certain tortuous acts, such as defamation, copyright infringement, and trademark infringement" virtually "pseudonymously or anonymously" due to their providing "fictitious or incomplete identifying information" in online transactions. Id. at 578. Thus, courts permit discovery to uncover the identity of a defendant in order to permit compliance with service requirements, utilizing established safeguards. Id. Indeed, other federal courts in this district have granted expedited discovery in lawsuits factually similar to the instant lawsuit. See Kimberlite Corporation v. Does, 2008 U.S. Dist. LEXIS 43071 (N.D. Cal. June 2, 2008); Evans v. Unknown Names of Department of Corrections Officers, 2007 U.S. Dist. LEXIS 3071 (N.D. Cal. January 3, 2007). Accordingly, Plaintiff respectfully requests that the subject application be granted.

**FACTUAL AND PROCEDURAL BACKGROUND**

As alleged in the Complaint on file herein, Plaintiff owns valid and effective copyrights and trademarks in a number of computer software programs for personal computers. Complaint ("Compl.") at ¶¶ 8-11. The very popularity of the Plaintiff's catalogs have fostered an industry of pirates who sell bootleg versions of Plaintiff's computer software. Compl. at ¶¶ 14-18. The Internet fosters a level of anonymity which can make identification of those who infringe Plaintiff's copyrights and trademarks nearly impossible when defendants take steps to conceal their true identities. See Declaration of Christopher D. Johnson ("Johnson Decl.") at ¶¶ 3-7. Defendant

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

is such a pirate and infringer who has taken great measures to avoid and ignore responsibility for his actions using accounts serviced by various third-party providers. Id. & Declaration of Nicole L. Drey ("Drey Decl.") at ¶¶ 3-7.

Defendant has obfuscated his true identity in his online transactions by using false identifying information. The Defendant was an eBay, Inc. ("eBay"), PayPal, Inc. ("PayPal") and Google Inc. ("Google") user, operating under the eBay User ID "itsawayoflife" and Google email address semisub@gmail.com. Johnson Decl. at ¶¶ 4-7. The product was shipped under the name "Alex Jackson" with a return address belonging to Defendant's father's place of business. Johnson Decl. at ¶ 7. PayPal further identified Defendant as Alex Jackson. Johnson Decl. at ¶ 4, Ex. B. However, service attempts made to the address Defendant provided to PayPal revealed the location to be the business address of Defendant's father. Drey Decl. at ¶ 3, Ex. E. Defendant's father then contacted Plaintiff's attorney's office, but he did not provide any contact information for Defendant and has failed to respond to subsequent letters and phone call attempts. Drey Decl. at ¶ 4. Additionally, Plaintiff has attempted to locate Defendant through various online and records searches, but these too have provided unsuccessful service addresses for Defendant. Drey Decl. at ¶ 3. As a result of Defendant's attempts to conceal his identity and location by use of an invalid address, Plaintiff's efforts to establish the Defendant's true identity, locate and serve this individual have been unsuccessful. Id.

Accordingly, third-party entities that provide services, which facilitate this anonymous and illegal industry, are entities most likely to have information that will assist in identifying those responsible, and in this instance, assist Plaintiff to conclusively identify, locate and serve Defendant Alex Jackson with process.

Plaintiff now seeks leave of Court to serve limited discovery on eBay, PayPal and Google (collectively the "Third-Party Service Providers") prior to the Fed. R. Civ. P. 26(f) Conference of Parties, to conclusively identify and locate the Defendant. Plaintiff intends to serve Fed. R. Civ. P. 45 subpoenas on the Third-Party Service Providers, seeking the Defendant's true name, address, and telephone number, as well as the identity of any associated financial institution(s) (which will

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

enable Plaintiff to seek leave to take additional discovery from the identified financial institution(s) should Plaintiff be unable to serve the Defendant after review of the records provided the Third-Party Service Providers).

If the Court grants this request, Plaintiff will serve subpoenas on the Third-Party Service Providers within ten (10) business days of receiving the Court's order. The Third-Party Service Providers will be able to move this Court for an Order quashing the subpoenas, will be able to give notice to its subscribers that this information is being sought, and any subscriber will have the opportunity to raise any objections before this Court prior to the return date of the subpoenas. Thus, there is no countervailing reason to deny Plaintiff's application for expedited discovery of these Third-Party Service Providers.

Moreover, Plaintiff demonstrates good cause for its request for an enlargement of time of an additional sixty (60) days within which to effect service of process. Plaintiff filed its Complaint on or about March 20, 2008. Pursuant to Fed. R. Civ. P. 4(m), Plaintiff must serve Defendant no later than on or about July 18, 2008. Though Plaintiff is diligently prosecuting this action and making every attempt to serve Defendant within the prescribed 120 days, Defendant's deliberate concealment of his location and evasion of service has left Plaintiff no recourse other than to seek information from Third-Party Service Providers. In doing so, Plaintiff must await the responses from the Third-Party Service Providers and analyze the information to identify and locate the Defendant. Plaintiff will thereafter attempt service and must again await the response and any additional information obtained by the process server, and likely, Plaintiff will be required to re-attempt service on the evasive Defendant on multiple occasions. Accordingly, Plaintiff demonstrates good cause for a 60 day enlargement of time within which to serve the Defendant.

## ARGUMENT

**I.      Plaintiff's Application Warrants Granting Leave to Take Immediate Discovery.**

Courts routinely allow discovery to identify "doe" defendants. *See* Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999) (error to dismiss unnamed defendants given possibility that identity could be ascertained through discovery); Gillespie v. Civiletti, 629 F.2d

1

2   637, 642 (9th Cir. 1980) ("where the identity of alleged defendants [are not] known prior to the

3   filing of a complaint … the plaintiff should be given an opportunity through discovery to identify

4   the unknown defendants"); *see also* Valentin v. Dinkins, 121 F.3d 72, 75-76 (2d Cir. 1997)

5   (discovery should have been permitted to reveal identity of defendant); Dean v. Barber, 951 F.2d

6   1210, 1215 (11th Cir. 1992) (error to deny plaintiff's motion to join John Doe defendant where

7   identity of John Doe could have been determined through discovery); Maclin v. Paulson, 627 F.2d

8   83, 87 (7th Cir. 1980) (plaintiff should have been permitted limited discovery); *see also* Bivens v.

9   Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 389 n. 2, 91 S. Ct.

10  1999 (1971) (noting, without discussion, the use of unnamed defendants).  This is especially true in

11  the context of online transactions where defendants often act virtually "pseudonymously or

12  anonymously" as tortfeasors in providing "fictitious or incomplete identifying information."

13  Seescandy.com, 185 F.R.D. at 578.

14          Courts consider the following factors, when granting motions for expedited discovery, to

15  identify anonymous Internet users: (1) whether the plaintiff can "identify the missing party with

16  sufficient specificity such that the Court can determine that defendant is a real person or entity who

17  could be sued in federal court"; (2) the previous steps taken by the plaintiff "to locate the elusive

18  defendant"; (3) whether plaintiff's "suit against defendant could withstand a motion to dismiss";

19  and (4) whether plaintiff has "justified the [need for the] specific discovery requested."

20  Seescandy.com, 185 F.R.D. at 578-80; *see also* Rocker Mgt. LLC v. John Does, 2003 U.S. Dist.

21  LEXIS 16277, at *1-2, (N.D. Cal. May 29, 2003) (applying Seescandy.com standard to identify

22  persons who posted libelous statements on Comcast message board; denying request for expedited

23  discovery where the postings in question were not libelous); *see also* Highfields Capital Mgmt.

24  L.P. v. John Doe, 385 F.Supp.2d 969, 971 (N.D. Cal. 2005) (relying on the Seescandy.com

25  standard in granting defendant's motion to quash in part because defendant's online statements

26  were found to be "sardonic commentary", rather than made "in connection with commercial

27  services", as alleged by plaintiff in support of its claims for trademark infringement).

28          Plaintiff easily meets this standard.

**A.    Plaintiff Has Identified the Defendant With Sufficient Specificity.**

First, Plaintiff has sufficiently identified the Defendant such that the Court can determine the Defendant is a "real person" who can be sued in federal court. *See* Seescandy.com, 185 F.R.D. at 578-80. Plaintiff has identified the Defendant by the name Defendant provided, as well as by a unique eBay and PayPal User ID. Johnson Decl. at ¶¶ 4-7. Both eBay and PayPal policies are such that the user "itsawayoflife" must authenticate his identity in order to transact business using these online services. Johnson Decl. at ¶ 3, Ex. A; ¶ 6, Ex. C.

The Defendant used his Third-Party Service Providers accounts to conduct a substantial and ongoing commercial enterprise. Johnson Decl. at ¶¶ 4-7. These same accounts provide a shield against identification by Plaintiff and against responsibility for Defendant's illegal activities. Unfortunately, Defendant has eluded Plaintiff by providing an invalid address, a possibly fictitious identity and no other information that is traceable to a valid identity or physical location for purposes of service of process. Johnson Decl. at ¶ 7; Drey Decl. at ¶ 3. However, due to the ongoing nature of the relationship between eBay and its users, eBay may possess additional information provided by the Defendant in response to, for example, requests for additional or updated information. Johnson Decl. at ¶ 3. PayPal also has an ongoing relationship with its users, due to the necessity to accurately send and receive payments, and is in a position to provide information sufficient to identify and locate the Defendant after reviewing its records. Johnson Decl. at ¶ 6. Google, the Internet provider supporting Defendant's email address semisub@gmail.com, possesses logs and records and is in a position to provide Defendant's name and address information. Drey Decl. at ¶ 6. Thus, Defendant is a "real person" who can be sued in federal court whose name and address is known to eBay, PayPal and Google.

**B.    Plaintiff Has Described Its Efforts To Identify the Elusive Defendant.**

Second, Plaintiff has identified the steps it has taken to identify and locate Defendant by gathering as much information about this Defendant as possible. Johnson Decl. at ¶¶ 4-7; Drey Decl. at ¶¶ 3-7. Plaintiff has completed a commercial transaction using available online financial tools and sourced product from the Defendant. Johnson Decl. at ¶¶ 4-7. Plaintiff has conducted

Adobe v. Jackson: *Ex Parte* Application        - 5 -
for Expedited Discovery

online records research and attempted to serve Defendant at various addresses. Drey Decl. at ¶¶ 3. Plaintiff has also attempted to obtain contact information for Defendant through his father, but this has proven unsuccessful as well. Id. at ¶ 4. Regrettably, none of these efforts has led to effective service of process. Drey Decl. at ¶ 3.

Plaintiff can obtain no other information about Defendant Alex Jackson without expedited discovery from the Third-Party Service Providers or similar third-party service providers. Drey Decl. at ¶¶ 3-7. Plaintiff has selected eBay because eBay has a continuous relationship with its sellers and requests updated and additional information throughout this relationship. Johnson Decl. at ¶ 3, Ex. A. Plaintiff has selected Google because its policies are such that users are required to provide accurate and updated personal information as part of its service agreement. Drey Decl. at ¶ 6, Ex. G. Plaintiff has selected PayPal because according to the PayPal terms of use, each PayPal account is linked with a verified financial account, usually a checking account. Johnson Decl. at ¶ 6, Ex. C. Moreover, PayPal's records will most likely yield correct information as the Defendant will be motivated to ensure that data pertaining to *receipt* of payment for completed sales is accurate.

### C.     Plaintiff's Action For Copyright and Trademark Infringement Would Withstand a Motion to Dismiss.

Third, the complaint sufficiently pleads *prima facie* claims for direct copyright and trademark infringement that can withstand a motion to dismiss. In ruling on a motion to dismiss, the court must accept all allegations of material fact as true and in a light most favorable to the non-moving party. Oscar v. University Students Co-op. Assoc, 965 F.2d 783, 785 (9th Cir. 1992). Plaintiff has alleged that it owns and has registered copyrights and trademarks in the works at issue, and that Defendant copied or distributed those works without Plaintiff's authorization, intentionally disseminating deceptive products that are likely to cause confusion or mistake to the public regarding the affiliation, sponsorship, endorsement or approval of the unauthorized product. *See* Compl. at ¶¶ 5-23. These allegations state claims for copyright and trademark infringement sufficient to withstand a motion to dismiss.

### a. Plaintiff's Copyright Infringement Claims

Plaintiff's claim for copyright infringement would withstand a motion to dismiss. Copyright infringement is proved by showing (i) ownership of the copyright and (ii) copying. <u>Shaw v. Lindheim</u>, 919 F.2d 1353, 1356 (9th Cir. 1990).

A certificate of registration made before publication or within five years after publication is *prima facie* evidence of copyright validity and of the facts stated in the certificate. 17 U.S.C. § 410(c). Relevant registrations and their present validity and effectiveness are alleged in the Complaint. Compl. at ¶¶ 8, 20.

Copying can be proved by proof of access and substantial similarity between the copyrighted property and the infringing item. <u>Johnson Controls, Inc. v. Phoenix Control Systems, Inc.</u>, 886 F.2d 1173, 1176 (9th Cir. 1989). The copying here is virtually identical.

Access to Plaintiff's works is undeniable and may be presumed as a result of widespread distribution and longstanding renown. <u>D.C. Comics, Inc. v. Bobtron Int'l., Inc.</u>, 1990 U.S. Dist. LEXIS 9107, at *2 (S.D.N.Y. July 25, 1990).

A two-part test applies to determine substantial similarity. The "extrinsic" part of the test focuses on similarities of ideas and requires an objective analysis of specific criteria. <u>Apple Computer, Inc. v. Microsoft Corp.</u>, 35 F.3d 1435, 1442 (9th Cir. 1994), *cert. denied* 513 U.S. 1184, 130 L.Ed.2d 1129, 115 S.Ct. 1176 (1995). The "intrinsic" part of the test focuses on the similarity of expression. <u>Id.</u> Both parts of the test are easily met here because the works are so nearly identical that "the possibility of independent creation is precluded." <u>Twentieth Century Fox Film Corp. v. MCA, Inc.</u>, 715 F.2d 1327, 1330 (9th Cir. 1983) (granting summary judgment for plaintiff where works were "overwhelmingly identical"). In fact, Defendant even advertised the product as that of Plaintiff's works.

Plaintiff has alleged that its computer software programs were copied and distributed without authorization, thus, there is no question concerning the sufficiency of Plaintiff's pleadings on the copyright infringement claim.

### b.  Plaintiff's Trademark Infringement Claims

Plaintiff's claim for trademark infringement would withstand a motion to dismiss. Registration of a mark on the principal register is "prima facie evidence… of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce…" 15 U.S.C. § 1115(a); Vigil v. Walt Disney Co., 1995 U.S. Dist. LEXIS 15560, at *5 (N.D. Cal. Oct. 16, 1995); Levi Strauss & Co. v. Blue Bell, Inc., 778 F.2d 1352, 1354 (9ᵗʰ Cir. 1985) (registration by the trademark holder constitutes *prima facie* evidence of a protected interest with respect to the good specified in the registration). Relevant registrations and their present validity and effectiveness are alleged in the Complaint. Compl. at ¶¶ 8, 20.

The test for infringement of a federally registered trademark under the Trademark Act of 1946 ("Lanham Act") is whether the alleged infringing act creates a likelihood of confusion. Seescandy.com, 185 F.R.D. at 580. In determining likelihood of confusion, the Ninth Circuit has adopted the Sleekcraft test, balancing the following factors: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and degree of care consumers are likely to exercise in purchasing them; (7) intent of the defendant in selecting the mark; and (8) likelihood that the parties will expand their product lines. AMF, Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-54 (9ᵗʰ Cir. 1979). In addition, when the alleged infringer knowingly adopts a mark similar to another's, there is a presumption that the public will be deceived. M2 Software, Inc. v. Madacy Entm't, 421 F.3d 1073, 1085 (9ᵗʰ Cir. 2005). These factors all demonstrate Defendant's infringement of Plaintiff's trademarks:

1.      Strength of the Trademark: Plaintiff's marks are exceptionally strong as they identify Plaintiff's high quality products such that they have acquired secondary meaning in the minds of consumers throughout the world. Compl. at ¶¶ 9-11.

2.      Proximity of goods: Plaintiff alleges in its Complaint that long after Plaintiff's registration and use of Plaintiff's trademarks, Defendant duplicated Plaintiff's marks on counterfeit merchandise. Compl. at ¶¶ 14-18, 25-26.

3.    Similarity of the Marks:  Defendant has sought to capitalize on Plaintiff's strong marks by copying them with no variation from their authorized versions.

4.    Evidence of Actual Confusion:  Purchases made by third-parties of Defendant's unauthorized, piratical product evidences actual confusion. Compl. at ¶¶ 16-18, 25-26.

5.    Marketing Channels Used: Defendant's product is software created for use in computer applications – a class of goods for which Plaintiff has trademark registrations.

6.    Type of Goods and Care Likely to be Exercised by the Purchaser: Defendant has duplicated Plaintiff's products so that consumers cannot differentiate between illegal and legitimate products at the point of purchase. Compl. at ¶¶ 16-18, 25-26. Modern consumers, who are aware of the sensitivity of quality computer products look to Plaintiff's marks for assurance of Plaintiff's developed and maintained goodwill and reputation for high quality products. Compl. at ¶¶ 9, 11.

7.    Defendant's Intent in Selecting the Mark: Defendant's intention to confuse the public is self-evident. When a person knowingly adopts a mark identical to another's mark, the Court may infer that person's intent to confuse. M2 Software, 421 F.3d at 1085 (willful use creates a presumption of public deception).

8.    Likelihood of Expansion of Product Lines: Plaintiff is already using its trademarks in the class of goods and services exploited by Defendant. Further, Defendant's intention to expand its product line is irrelevant as Defendant is operating an illegitimate business practice whose existing product line consists of pirated goods.

Thus, Plaintiff is a valid trademark holder and has sufficiently alleged in their pleadings a likelihood of confusion under the Sleekcraft factors to withstand a motion to dismiss on the trademark infringement claim.

**D.    Plaintiff Has Justified the Discovery.**

Fourth, Plaintiff has justified the need for the discovery requested.  Plaintiff cannot wait until after the Fed. R. Civ. P. 26(f) Conference of Parties to propound this discovery because of the inability to serve the Defendant with process, thereby making any such resulting conference

impossible. Plaintiff has limited the subject matter concerning the discovery and has proposed an Order incorporating safeguards which permits the individual affected to object.

### E.    Plaintiff Has Shown Good Cause.

Plaintiff also easily satisfies the "good cause" standard for allowing early discovery applied by some courts. *See* Semitool, Inc. v. Tokyo Electron Am., Inc., 208 F.R.D. 273, 275-76 (N.D. Cal. 2002); Qwest Comm. Int'l, Inc. v. WorldQuest Networks, Inc., 213 F.R.D. 418, 419 (D. Colo. 2003); Entertainment Tech. Corp. v. Walt Warner Imagineering, 2003 U.S. Dist. LEXIS 19832, at *12 (E.D. Pa. 2003) (applying a reasonableness standard; "a district court should decide a motion for expedited discovery on the entirety of the record to date and the reasonableness of the request in light of all of the surrounding circumstances") (quotations omitted); Yokohama Tire Corp. v. Dealers Tire Supply, Inc., 202 F.R.D. 612, 614 (D. Ariz. 2001) (adopting a good cause standard).

The requirement that parties must meet and confer prior to seeking expedited discovery may be dispensed with if good cause is shown. Semitool, Inc., 208 F.R.D. at 275-76. First, good cause exists where, as here, the complaint alleges claims of infringement. Id. at 276; Qwest Comm., 213 F.R.D. at 419 ("The good cause standard may be satisfied . . . where the moving party has asserted claims of infringement and unfair competition."); Benham Jewelry Corp. v. Aron Basha Corp., 1997 U.S. Dist. LEXIS 15957, at *58 (S.D.N.Y. Oct. 14, 1997). Copyright infringement claims necessarily involve irreparable harm to plaintiffs. 4 Nimmer § 14.06[A], at 14-103; *see also* Health Ins. Ass'n of Am. v. Novelli, 211 F.Supp.2d 23, 28 (D.D.C. 2002) ("A copyright holder [is] presumed to suffer irreparable harm as a matter of law when his right to the exclusive use of copyrighted material is invaded.") (quotations and citations omitted); *see also* Taylor Corp. v. Four Seasons Greetings, LLC, 315 F.3d 1039, 1041-42 (8th Cir. 2003); ABKCO Music, Inc. v. Stellar Records, Inc., 96 F.3d 60, 66 (2d Cir. 1996).

Plaintiff has also shown a strong chance of success on its trademark infringement claim to warrant a presumption of irreparable harm. International Kennel Club v. Mighty Star, Inc., 846 F.2d 1079, 1092 (7th Cir. 1988) (presumption arises upon showing of more than a negligible chance of success). Trademark infringement also "by [its] very nature result[s] in irreparable injury."

PepsiCo, Inc. v. Reyes, 70 F.Supp.2d 1057, 1060 (C.D. Cal. 1999); *see also* Black Hills Jewelry Manufacturing Co. v. Gold Rush, Inc., 633 F.2d 746, 753 (8th Cir. 1980); Helene Curtis Industries v. Church & Dwight Co., 560 F.2d 1325, 1332 (7th Cir. 1977); Omega Importing Corp. v. Petri-Kine Camera Co., 451 F.2d 1190, 1195 (2d Cir. 1971); Grupo Gamesa S.A. v. Dulceria El Molino Inc., 1996 U.S. Dist. LEXIS 13193, at *10 (C.D. Cal. 1996); Porsche Cars North America Inc. v. Manny's Porshop Inc., 972 F.Supp. 1128, 1132 (N.D. Ill. 1997); PepsiCo, Inc. v. Torres, 1993 U.S. Dist. LEXIS 17588, at * 8 (C.D. Cal. 1993).

Second, good cause exists because the narrowly tailored discovery requests do not exceed the minimum information required to advance this lawsuit and will not prejudice the Defendant.[1] *See* Semitool, 208 F.R.D. at 276 ("Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party."). There is no prejudice to Defendant because Plaintiff merely seeks information to identify Defendant and to serve him with process. Moreover, Plaintiff agrees to use the information disclosed pursuant to its subpoenas only for the purpose of protecting its rights under the copyright and trademark laws. Moreover, as the subpoenaed Third-Party Service Providers will be able to give notice to their subscribers that this information is being sought, any subscriber, including Defendant, will have the opportunity to raise any objections before this Court prior to the return date of the subpoenas.

Third, this lawsuit is currently at a standstill without the limited discovery Plaintiff seeks as there is no other information Plaintiff can obtain about the Defendant without discovery from the Third-Party Service Providers. Defendant used the services of the Third-Party Service Providers to provide cover and to facilitate his illegal activities. Courts regularly permit early discovery where such discovery will "substantially contribute to moving th[e] case forward." Semitool, 208 F.R.D. at 277; *see also* Best Western International, Inc. v. John Doe, et al., 2006 U.S. Dist. LEXIS 56014, at *3-4 (Ariz. July 25, 2006) ["[Plaintiff] has satisfied the good cause requirement. [Plaintiff] has established by affidavit that it is unable to identify the John Doe Defendants by means other than

---

[1] Likewise, there is no prejudice to the Third-Party Service Providers since they will be able to seek an Order quashing any subpoenas directed at them or to move this Court for other relief.

Adobe v. Jackson: *Ex Parte* Application            - 11 -
for Expedited Discovery

the subpoenas. ... The case cannot proceed and a Rule 26(f) conference cannot be held until these Defendants are identified.").

Fourth, "courts have recognized that [Internet service providers] typically retain user information for only a limited period, ranging from a few days to a few months" and further that good cause is shown where the information sought may be lost if discovery is delayed. Best Western, 2006 U.S. Dist. LEXIS at *3-4 (citing UMG Recordings, Inc. v. Does, 2006 U.S. Dist. LEXIS 32821, at *1 (N.D. Cal. Mar. 6, 2006) ("Because the identities of the John Doe Defendants [are] necessary for this case to proceed and there is reason to believe that those identities may be lost if discovery is delayed, the Court concludes that [Plaintiff] has established good cause to conduct discovery before the Rule 26(f) conference."). Thus, Plaintiff seeks only to gather timely information from the very sources used by Defendant to further his illegal activities and only for purposes of conclusively identifying and locating the Defendant so that the lawsuit can proceed.

## II.    Plaintiff Demonstrates Cause Permitting an Enlargement of Time Within Which to Effect Service of Process.

Plaintiff respectfully requests that, pursuant to Rule 6(b), the Court grant a sixty (60) day enlargement of time within which to effect service of Summons and Complaint.

> When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for *cause shown* may at any time in its discretion (1) with or without motion or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order . . .

Fed. Rule Civ. P. 6(b) (emphasis added). Plaintiff filed its Complaint on or about March 20, 2008. Per Rule 4(m),[2] Plaintiff must effect service of Summons and Complaint on Defendant on or about

---

[2] "If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period." Efaw v. Williams, 473 F.3d 1038, 1041 (9th Cir. 2007) (*quoting* Fed. R. Civ. P. 4(m)).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

July 18, 2008. Accordingly, Plaintiff submits its request for an enlargement of time "before the expiration of the period originally prescribed" by Rule 4(m). Fed. Rule Civ. P. 6(b).

Moreover, "[d]istrict courts have broad discretion to extend time for service under Rule 4(m). . . .[as] Rule 4's 120-day time period for service 'operates not as an outer limit subject to reduction, but as an irreducible allowance.'" Efaw v. Williams, 473 F.3d 1038, 1041 (9th Cir. 2007) (quoting Henderson v. United States, 517 U.S. 654, 661, 116 S. Ct. 1638, 134 L. Ed. 2d 880 (1996)). Further, "'Rule 4(m) explicitly permits a district court to grant an extension of time to serve the complaint after that 120-day period.'" Id. (quoting Mann v. Am. Airlines, 324 F.3d 1088, 1090 (9th Cir. 2003) ("On its face, Rule 4(m) does not tie the hands of the district court after the 120-day period has expired.")). Pursuant to Fed. R. Civ. P. 4(m), a district court is required to grant an extension of time for service if good cause is shown and permitted to grant such an extension even absent good cause. Mann, 324 F.3d at 1090, n. 2 (citing Henderson, 517 U.S. at 662)).

Here, Plaintiff's actions demonstrate good cause for granting an enlargement of time to effect service upon the Defendant. First, as discussed previously, Plaintiff has in good faith made significant attempts to identify, locate and serve Defendant within the 120 day period. See Drey Decl. at ¶¶ 3-5. Since the filing of the Complaint, Plaintiff has researched available public records, including extensive research on Lexis-Nexis and by other means, in search of contact information for Defendant, including any and all possible aliases, dba's, email addresses, websites and physical locations. Id. Plaintiff filed the Complaint in this Action on or March 20, 2008. Since that time, Plaintiff has attempted to serve Defendant at various locations and has attempted to obtain contact information from Defendant's father – all to no avail. Id. Accordingly, Plaintiff's efforts to effect service commencing in March 2008 demonstrate good faith effort to diligently prosecute this Action and good cause for an enlargement of time.

Second, Defendant will not suffer prejudice by virtue of the delayed service. Pursuant to Rule 4(m), Plaintiff is to serve Defendant on or about July 18, 2008. Drey Decl. at ¶ 2. Plaintiff requests only an extension of 60 days within which to serve Defendant. Accordingly, this is not a

significant delay during which memories may fade or evidence be lost that would prejudice Defendant. Id. *But see* Efaw v. Williams, 473 F.3d at 1041 (finding that an extraordinary delay of seven years prejudiced Defendant).

Finally, assuming *arguendo* that Plaintiff's Application for leave to take immediate discovery is granted, Plaintiff demonstrates good cause for its request for an enlargement of time of an additional 60 days within which to effect service on Defendant. Though Plaintiff is diligently prosecuting this action and making every attempt to serve Defendant within the prescribed 120 days, Defendant's deliberate concealment of his location and evasion of service have left Plaintiff no recourse other than to seek information from Third-Party Service Providers. In doing so, Plaintiff must wait 21 days for the information from the Third-Party Service Providers and subsequently analyze the information produced to identify and locate the Defendant. Plaintiff will thereafter attempt service, and must again await the response and any additional information obtained by the process server. Likely, Plaintiff will be required to re-attempt service on the evasive Defendant on multiple occasions. Under the circumstances, Plaintiff demonstrates that it is diligently prosecuting the Action and good cause exists for a 60 day enlargement of time within which to serve the Defendant.

## CONCLUSION

For the foregoing reasons, and as it has no other recourse absent this Court's intervention, Plaintiff respectfully requests that the Court grant the *Ex Parte* Application and enter an Order substantially in the form of the attached Proposed Order.

DATED: July 11, 2008

J. Andrew Coombs, A Professional Corp.

By: _____
       J. Andrew Coombs
       Nicole L. Drey
Attorneys for Plaintiff Adobe Systems Incorporated

## DECLARATION OF CHRISTOPHER D. JOHNSON

I, CHRISTOPHER D. JOHNSON, declare as follows:

1.    I am an attorney duly admitted to practice before the courts of the Central District of California. I am the owner and principal of Effective Piracy Enforcement, Inc. ("EPE"). Except as otherwise stated, I have personal knowledge of the facts set forth herein and, if called as a witness, I would testify as follows.

2.    I served as an Assistant United States Attorney in the Central District of California for fourteen (14) years, including the Computer Crimes and Intellectual Property Enforcement Unit. During my employment as an AUSA, a significant portion of my time was spent prosecuting defendants charged with criminal violations of the Copyright Act. I was also employed as Vice-President for Anti-Piracy by The Walt Disney Company.

3.    eBay is an online auction service through which thousands of auctions are posted each day. A directory identifies categories of product in which Internet users can post their auctions, and a search feature allows users to find auctions posted by seller, or to type in key words which allow them to locate all auctions in which that key word appears, either as part of the title or anywhere in the text of the listing. Sellers (and buyers) are designated by "User IDs" which are selected by the eBay user when an account is established. Sellers are required to create a seller's account, which prompts the seller to provide financial account information for purposes of payment of fees charged by eBay. Sellers may elect to change their User IDs at any time, and we have identified some sellers that have multiple User IDs in concurrent use. The eBay auction site appears at www.ebay.com. A true copy of the eBay Privacy Policy is attached hereto as Exhibit A.

4.    On or about December 7, 2007, I engaged in an eBay auction posted by eBay user "itsawayoflife" for a copy of Adobe Photoshop CS3, advertised as "Adobe Photoshop CS3 FULL RETAIL VERSION for Windows." I placed the winning bid and payment through PayPal was

1  sent to eBay seller "itsawayoflife," identified as "Alex Jackson," with an email address of

2  "semisub@gmail.com."  A true and correct copy of the printout confirming my successful bid of

3  "Adobe Photoshop CS3 FULL RETAIL VERSION for Windows" sold by "itsawayoflife" and

4  indicating payment sent to the email address "semisub@gmail.com" is attached hereto as Exhibit

5  B.

6

7      5.    I am informed and believe that eBay may possess additional information, beyond

8  that which was publicly accessible on eBay, due to the ongoing nature of the relationship between

9  eBay and sellers (i.e. requests for additional and/or updated information).

10     6.    Pursuant to the instructions appearing on the posting, I paid using PayPal, as

11 illustrated in Exhibit B.  PayPal, Inc. ("PayPal") is an online payment service through which an

12 account can be established (much like a bank account) and through which users can pay for (and be

13 paid for) items sold on eBay and other Internet sites.  Pursuant to the PayPal Privacy Policy,

14 incorporated by reference into the User Agreement, PayPal users must provide a "name, address,

15 phone, email…and other similar information" to open a PayPal account as well as valid "bank

16 account numbers and credit card numbers" to make payments through PayPal, all of which is

17 subject to verification.  A true copy of the PayPal Privacy Policy and User Agreement are

18 collectively incorporated hereto as Exhibit C.

19     7.    On or about December 9, 2007, I received a package pursuant to the "Adobe

20 Photoshop CS3 FULL RETAIL VERSION for Windows" order which indicated a return address

21 of "Alex Jackson, 31324 Via Colinas, Suite 114, Westlake Village, CA 91362."  A true and correct

22 copy of the package I received containing a copy of "Adobe Photoshop CS3 FULL RETAIL

23 VERSION for Windows" is attached hereto as Exhibit D.

24 / / /

25 / / /

26

27

28

Adobe v. Jackson: *Ex Parte* Application            - 16 -
for Expedited Discovery

1    I declare under penalty of perjury under the laws of the United States of America that the

2   foregoing is true and correct.

3    Executed this 30 day of ___June___, 2008, at Los Angeles, California.

4

5    _____

6    CHRISTOPHER D. JOHNSON

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Adobe v. Jackson: *Ex Parte* Application for
Expedited Discovery

17

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF NICOLE L. DREY

I, NICOLE L. DREY, declare as follows:

1.    I am an attorney at law, duly admitted to practice before the Courts of the State of California and the United States District Court for the Northern District of California. I am an attorney for Plaintiff Adobe Systems Incorporated ("Plaintiff") in an action styled <u>Adobe Systems Incorporated v. Alex Jackson, et al.</u>, Case Number C08-1536 JW. Except as otherwise expressly stated to the contrary, I have personal knowledge of the following facts and, if called as a witness, I could and would competently testify as follows.

2.    I am informed and believe that Plaintiff filed its Complaint on or about March 20, 2008. I am informed and believe that, pursuant to Rule 4(m), Plaintiff is to serve Defendant on or about July 18, 2008.

3.    I am informed and believe that since the filing of the Complaint until the filing of this *ex parte* application, Plaintiff has spent a considerable amount of time and resources tracing all known contact information for Defendant Alex Jackson ("Defendant"). As part of these efforts, I am informed and believe that my office conducted online records searches for "Alex Jackson," which produced two possible addresses – 3133 E. Hillcrest Dr., Westlake Village, CA 91362 and 5332 Mark Ct., Apt. #1090, Agoura Hills, CA 91301. I am informed and believe that the process server attempted service at these addresses but was informed by the respective occupants that each did not know Defendant. I am informed and believe that the only other address linked to Defendant was the address provided on the shipping label of the eBay transaction – "Alex Jackson, 31324 Via Colinas, Suite 114, Westlake Village, CA 91362." I am informed and believe that the process server then attempted service at this address and left the Summons and Complaint with Defendant's father at the father's place of business. Attached hereto as Exhibit E is a true and correct copy of the process server's invoice, detailing service attempts.

4.    I am informed and believe that Curtiss Jackson contacted my office on or about May 5, 2008, claiming to be Defendant's father.  I am informed and believe that Curtiss Jackson claimed Defendant was living with friends somewhere in Chicago but would not provide any contact information for Defendant.  I am informed and believe that subsequent calls to Curtiss Jackson have gone unanswered and unreturned, and I am informed and believe that subsequent online records searches have produced no additional addresses for Defendant.

5.    I am informed and believe that as of June 2008, Defendant's known User ID is no longer registered on eBay and there is a limited amount of publicly accessible information available through eBay.com pertaining to this ID.  Attached hereto as Exhibit F is a printout of the eBay Member User ID History for "itsawayoflife."

6.    Google Inc. ("Google") is an internet search provider which supports gmail.com email addresses.  Pursuant to Google's Terms of Use, users "may be required to provide information about [themselves] (such as identification or contact details)."  Moreover, users "agree to use [Google] only for purposes that are permitted by…any applicable law, regulation or generally accepted practices or guidelines in the relevant jurisdictions."  A true and correct copy of Google's Terms of Use is attached hereto as Exhibit G.

7.    The requested Order granting Plaintiff's Application for Leave to Take Immediate Discovery is Plaintiff's only remaining method available to identify and locate Defendant.  Without expedited discovery, Plaintiff has no way of serving Defendant with the Complaint and Summons in this case.  Plaintiff does not conclusively have Defendant's true name(s), address(es), e-mail address(es), or any other way to identify or locate Defendant.  As described in the declarations and as evidenced by the Exhibits attached hereto, the eBay User ID is linked to an inconclusive address and possibly a fictitious name, supplied to eBay when "itsawayoflife" established his user account with eBay.

Adobe v. Jackson: *Ex Parte* Application
for Expedited Discovery

- 19 -

8.    Should the information provided by eBay, PayPal and Google provide a postal mailbox address or otherwise invalid information, their identification of Defendant's financial institution(s) will enable Plaintiff to seek leave to take additional discovery from the identified financial institution if that is required to identify Defendant.

9.    Obtaining the identity of copyright infringers on an expedited basis is critical to prosecution of this action and stopping the continued infringement of Plaintiff's software. Defendant's true identity and location remains unknown.

I declare under penalty of perjury that the foregoing is true and correct under the laws of the United States of America.

Executed this 11th day of July, 2008, at Glendale, California.

NICOLE L. DREY

**Exhibit A**

eBay Privacy Policy

Page 1 of 6

eBay Privacy Policy

This policy tells you about how we use and protect your personal information. To see a summary of this policy, and for more information to answer your privacy concerns, please go to our Privacy Central page. We are a TRUSTe licensee. If we do not respond to your question, please contact TRUSTe. The TRUSTe program covers only information that is collected through the websites covered by this policy. It does not cover information that may be collected through software downloaded from these sites.



**Contents**

- Scope

- Collection

- Marketing

- Use

- Our Disclosure of Your Information

- Information You Share on eBay

- Using Information from eBay

- Cookies

- No Spam, Spyware or Spoofing

- Account Protection

- Accessing, Reviewing and Changing Your Personal Information

- Security

- Third Parties

- General

## Scope

This Privacy Policy describes how we handle your personal information for our services on the eBay websites. It applies generally to the eBay.com website and content and other related websites where this policy appears in the footer of the page. Some eBay-branded websites or websites we operate may be

governed by separate privacy policies. The policy that applies on any of our domains or subdomains is always the policy that appears in the footer of each website.

Our subsidiaries' and joint ventures' privacy practices are similar to those described in this Privacy Policy. Subject to the requirements of applicable law, we strive to provide a consistent set of privacy practices throughout the global eBay trading community. By accepting the Privacy Policy and the User Agreement in registration, you expressly consent to our collection, storage, use and disclosure of your personal information as described in this Privacy Policy. This Privacy Policy is effective upon acceptance for new users and is otherwise effective on August 13, 2008.

## Collection

You can browse our sites without telling us who you are or revealing any personal information about yourself. Once you give us your personal information, you are not anonymous to us. If you choose to provide us with personal information, you consent to the transfer and storage of that information on our servers located in the United States.

We may collect and store the following personal information:

- email address, physical contact information, and (depending on the service used) sometimes financial information, such as credit card or bank account numbers;

- transactional information based on your activities on the sites (such as bidding, buying, selling, item and content you generate or that relates to your account);

- shipping, billing and other information you provide to purchase or ship an item;

- community discussions, chats, dispute resolution, correspondence through our sites, and correspondence sent to us;

- other information from your interaction with our sites, services, content and advertising, including computer and connection information, statistics on page views, traffic to and from the sites, ad data, IP address and standard web log information;

- additional information we ask you to submit to authenticate yourself or if we believe you are violating site policies (for example, we may ask you to send us an ID or bill to verify your address, or to answer additional questions online to help verify your identity or ownership of an item you list);

- information from other companies, such as demographic and navigation data; and

- other supplemental information from third parties (for example, if you incur a debt to eBay, we will generally conduct a credit check by obtaining additional information about you from a credit bureau, as permitted by law).

## Marketing

We don't sell or rent your personal information to third parties for their marketing purposes without your explicit consent. We may combine your information with information we collect from other companies and use it to improve and personalize our services, content and advertising. If you don't wish to receive

marketing communications from us or participate in our ad-customization programs, simply indicate your preference in My eBay or by following the directions provided with the communication or advertisement.

## Use

Our primary purpose in collecting personal information is to provide you with a safe, smooth, efficient, and customized experience. You agree that we may use your personal information to:

- provide the services and customer support you request;

- resolve disputes, collect fees, and troubleshoot problems;

- prevent potentially prohibited or illegal activities, and enforce our User Agreement;

- customize, measure and improve our services, content and advertising;

- tell you about our services and those of our corporate family, targeted marketing, service updates, and promotional offers based on your communication preferences; and

- compare information for accuracy, and verify it with third parties.

## Our Disclosure of Your Information

We may disclose personal information to respond to legal requirements, enforce our policies, respond to claims that a listing or other content violates the rights of others, or protect anyone's rights, property, or safety. Such information will be disclosed in accordance with applicable laws and regulations.

We may also share your personal information with:

- Members of the eBay Inc. corporate family—like PayPal, Skype or Shopping.com—to provide joint content and services (like registration, transactions and customer support), to help detect and prevent potentially illegal acts and violations of our policies, and to guide decisions about their products, services and communications. Members of our corporate family will use this information to send you marketing communications only if you've requested their services.

- Service providers under contract who help with our business operations (such as fraud investigations, bill collection, affiliate and rewards programs and co-branded credit cards).

- Other third parties to whom you explicitly ask us to send your information (or about whom you are otherwise explicitly notified and consent to when using a specific service).

- Law enforcement or other governmental officials, in response to a verified request relating to a criminal investigation or alleged illegal activity. In such events, we will disclose information relevant to the investigation, such as name, city, state, zip code, telephone number, email address, User ID history, IP address, fraud complaints, and bidding and listing history.

- eBay VeRO Program participants under confidentiality agreement, as we in our sole discretion believe necessary or appropriate in connection with an investigation of fraud, intellectual property infringement, piracy, or other unlawful activity. In such events, we will disclose name, street

address, city, state, zip code, country, phone number, email address and company name.

- Other business entities, should we plan to merge with or be acquired by that business entity. (Should such a combination occur, we will require that the new combined entity follow this privacy policy with respect to your personal information. If your personal information will be used contrary to this policy, you will receive prior notice.)

Without limiting the above, in an effort to respect your privacy and our ability to keep the community free from bad actors, we will not otherwise disclose your personal information to law enforcement, other government officials, or other third parties without a subpoena, court order or substantially similar legal procedure, except when we believe in good faith that the disclosure of information is necessary to prevent imminent physical harm or financial loss or to report suspected illegal activity.

## Information You Share on eBay

Your User ID is displayed throughout eBay (and so available to the public), and is connected to all of your eBay activity. Other people can see your bids, purchases, items for sale, storefronts, feedback, ratings and associated comments. Notices sent to other community members about suspicious activity and policy violations on our sites refer to User IDs and specific items. So if you associate your name with your User ID, the people to whom you have revealed your name will be able to personally identify your eBay activities.

If you access our sites from a shared computer or a computer in an internet café, certain information about you, such as your User ID, activity or reminders from eBay, may also be visible to other individuals who use the computer after you.

## Using Information from eBay

eBay enables you to share personal and financial information to complete transactions. We encourage you to disclose your privacy practices and respect the privacy of other users. We cannot guarantee the privacy or security of your information and therefore we encourage you to evaluate the privacy and security policies of your trading partner before entering into a transaction and choosing to share your information. To help protect your privacy, we allow only limited access to other users' contact, shipping and financial information to facilitate your transactions. When users are involved in a transaction, they may have access to each other's name, User ID, email address and other contact and shipping information. In all cases, you must give other users a chance to remove themselves from your database and a chance to review what information you have collected about them.

You agree to use user information only for:

- eBay transaction-related purposes that are not unsolicited commercial messages;
- using services offered through eBay (*e.g.* escrow, insurance, shipping and fraud complaints), or
- other purposes that a user expressly chooses.

## Cookies

We use "cookies" (small files placed on your hard drive) on certain of our pages to help analyze our web page flow; customize our services, content and advertising; measure promotional effectiveness, and

EXHIBIT A                    Page 24

promote trust and safety. For more information about why we use cookies, see Cookies, Web Beacons, and Your Privacy.

A few important things you should know about cookies are that:

- We offer certain features that are available only through the use of cookies.

- We use cookies to help identify you and maintain your signed-in status.

- Most cookies are "session cookies," meaning that they are automatically deleted from your hard drive at the end of a session.

- You are always free to decline our cookies if your browser permits, although doing so may interfere with your use of some of our sites or services.

- You may encounter cookies from third parties on certain pages of the sites that we do not control. (For example, if you view a web page created by another user, there may be a cookie placed by that web page.)

## No Spam, Spyware or Spoofing

We and our users do not tolerate spam. Make sure to set your eBay notification preferences so we communicate to you as you prefer. You are not licensed to add other eBay users, even a user who has purchased an item from you, to your mailing list (email or physical mail) without their express consent. To report eBay-related spam or spoof emails to eBay, please forward the email to spam@ebay.com or spoof@ebay.com. You may not use our communication tools or otherwise send content that would violate our User Agreement. We automatically scan and may manually filter messages to check for spam, viruses, phishing attacks and other malicious activity or illegal or prohibited content, but we do not permanently store messages sent through these tools. If you send an email to an email address that is not registered in our community (via Refer-a-Friend or other tools), we do not permanently store that email or use that email address for any marketing purpose. We do not rent or sell these email addresses.

## Account Protection

Your password is the key to your account. Use unique numbers, letters and special characters, and do not disclose your eBay password to anyone. If you do share your password or your personal information with others, remember that you are responsible for all actions taken in the name of your account. If you lose control of your password, you may lose substantial control over your personal information and may be subject to legally binding actions taken on your behalf. Therefore, if your password has been compromised for any reason, you should immediately notify eBay and change your password.

## Accessing, Reviewing and Changing Your Personal Information

You can see, review and change most of your personal information by signing on to eBay. Generally, we will not manually modify your personal information because it is very difficult to verify your identity remotely. You must promptly update your personal information if it changes or is inaccurate. Once you make a public posting, you may not be able to change or remove it. Upon your request, we will close your account and remove your personal information from view as soon as reasonably possible, based on your account activity and in accordance with applicable law. We do retain personal information from

closed accounts to comply with law, prevent fraud, collect any fees owed, resolve disputes, troubleshoot problems, assist with any investigations, enforce our eBay User Agreement, and take other actions otherwise permitted by law.

## Security

Your information is stored on our servers located in the United States. We treat data as an asset that must be protected and use lots of tools (encryption, passwords, physical security, etc.) to protect your personal information against unauthorized access and disclosure. However, as you probably know, third parties may unlawfully intercept or access transmissions or private communications, and other users may abuse or misuse your personal information that they collect from the site. Therefore, although we work very hard to protect your privacy, we do not promise, and you should not expect, that your personal information or private communications will always remain private.

## Third Parties

Except as otherwise expressly included in this Privacy Policy, this document addresses only the use and disclosure of information we collect from you. If you disclose your information to others, whether they are bidders, buyers or sellers on our sites or other sites throughout the internet, different rules may apply to their use or disclosure of the information you disclose to them. eBay does not control the privacy policies of third parties, and you are subject to the privacy policies of those third parties where applicable. We encourage you to ask questions before you disclose your personal information to others.

## General

We may amend this Privacy Policy at any time by posting the amended terms on this site. All amended terms automatically take effect 30 days after they are initially posted on the site. In addition, we will notify you through the eBay Message Center. If your questions are not answered online, you may write to us at: eBay Inc. Attn: Legal - Global Privacy Practices, 2145 Hamilton Avenue, San Jose, California 95125, or using the Contact Us form.

**Related Help topics**

- Appendix to Privacy Policy

- Unsolicited Email (Spam)

- eBay User Agreement

- Managing Your Account with My eBay

**Exhibit B**

**b**    Sign out

Buy  Sell  My eBay  Community  Help

Site Map

| | All Categories ⌄ | Search | Advanced Search |

Categories ▼   Motors   Express   Stores

No payments 3 months

← Back to My eBay    Listed in category: Computers & Networking > Software > Graphics, Photo & Publishing > Digital Image Editing > Adobe

## Adobe Photoshop CS3 FULL RETAIL VERSION for Windows
INTERNATIONAL SHIPPING AVALABLE – Free Domestic express

Item number: 120192879446

✓ **Your PayPal payment has been sent. Thank you.**

[ Leave Feedback > ]   Your feedback lets other eBay users know what your experience has been with this seller.

### Find more items from the same seller. Bid or Buy Now!

Add to Favorite Sellers

Christian Audiger Hoodie Sweatshirt Authentic M tank

Christian Audiger Hoodie Sweatshirt Authentic L NR

Christian Audiger Hoodie Sweatshirt Authentic L NR

| 2 bids | US $10.51 | 6 bids | US $34.00 | 8 bids | US $31.00 |
| Time left | 1d 2h 55m | Time left | 2d 3h 56m | Time left | 2d 3h |

View more items from this seller

**Next Steps:**
Track all of your bidding and buying activities in My eBay.
♡ Add this seller to my Favorite sellers in My eBay.

Buy It Now price: **US $269.00**

No payments for 90 days Apply

Ended:          Dec-07-07 05:02:01 PST
Shipping costs: Free
                Expedited Flat Rate Shipping Service
                Service to United States
                (more services)
Ships to:       Worldwide
Item location:  OC, United States
Quantity:       0 available
History:        Purchases

You can also:   Email to a friend

View larger picture

Listing and payment details: Show

**Meet the seller**

Seller:    dsawayoflife ( 79 ⭐ )
Feedback:  97.5% Positive
Member:    since Sep-12-05 in United States
           See detailed feedback
           Ask seller a question
           Add to Favorite Sellers
           View seller's other items

**Buy safely**

1. Check the seller's reputation
   Score: 79 | 97.5% Positive
   See detailed feedback
2. Check how you're protected
   PayPal Up to $200 in buyer protection. See eligibility.

Returns:   Seller accepts returns.
           3 Days Money Back

## Description (revised)

Item Specifics - Item Condition
Condition:    New
Brand :       Adobe                    Platform : Windows (PC)
Digital Imaging & Editing Type : Digital Image Editing

Up For auction, Adobe Photoshop CS3 For Windows OS.

## Brand new NEVER opened , NEVER registered.

Factory sealed, FULL install version

## !! Free Priority Domestic Shipping !!

!! .......... ..........  ........ ........ !!

Experience top of the line digital editing with Adobe Photoshop CS3.

The new interface is extremely customizable and allows for easier more efficent usage for all.

1. Intel Pentium 4, Intel Core Duo, Intel Xeon, or Intel Centrino or equivalent
2. Microsoft Windows XP with Service Pack 2 or Windows Vista.
3. DVD-ROM drive
4. 64MB of video RAM
5. 512MB of RAM
6. 1GB of available hard-disk space
7. 1.024x768 monitor resolution with 16-bit video card
8. DVD-ROM drive
9. QuickTime 7 software required for multimedia features
10. Internet or phone connection required for product activation

## Retail Box contains:

1. Adobe Photoshop CS3
2. Adobe CS3 Video Workshop
3. Adobe CS3 Photoshop Manual





Thanks for
looking!
What's your Credit Score? 720? 660? Find Out From Experian.

## Shipping and handling

**Ships to**
Worldwide

Country: United States ⌄    [Update]

| Shipping and Handling | Each Additional Item | To | Service |
|---|---|---|---|
| FREE | Free | United States | Expedited Flat Rate Shipping Service |

**Shipping insurance**
Domestic: Not offered
International: Optional (based on location and shipping service)

## Return policy

| | |
|---|---|
| Item must be returned within: | 3 Days |
| Refund will be given as: | Money Back |
| Return policy details: | Un-Opened Only |

## Payment details

| Payment method | Preferred/Accepted | Buyer protection on eBay |
|---|---|---|
| **Pay**Pal VISA BANK | Seller Preferred | **Pay**Pal Up to $200 in buyer protection. See eligibility. |
| Money order/Cashiers check | Accepted | Not Available |
| Personal check | Accepted | Not Available |

Learn about payment methods

## Other options

**PayPal**

Log Out | Help | Security Center                    Search

## Transaction Details

**eBay Payment Sent** (ID = 5FD7490854894321Y)

| | |
|---|---|
| **Total Amount:** | -$269.00 USD |
| **Date:** | Dec. 7, 2007 |
| **Time:** | 00:13:36 PST |
| **Status:** | Completed |

| Item # | Item Title | Qty | Price | Subtotal |
|---|---|---|---|---|
| 120192879446 | Adobe Photoshop CS3 FULL RETAIL VERSION for Windows | 1 | $269.00 USD | $269.00 USD |

| | |
|---|---|
| Shipping & Handling via Expedited Delivery (includes any seller handling fees): | -- |
| Shipping Insurance : | -- |
| **Total:** | $269.00 USD |

**Shipping Address:**
Woodland Hills, CA 91364
United States
Confirmed

**Payment To:** Alex Jackson   (The recipient of this payment is Verified)
**Seller's ID:** itsavaycflife
**Seller's Email:** semisub@gmail.com

**Funding Type:** Instant Transfer
**Funding Source:** $269.00 USD - .      Confirmed) xxxxxx

**Back Up Funding Source:** MasterCard Card XXXX-XXXX-XXXX

## Shipment Information

**Shipping Status:** Shipped
**Reference Number:** U.S. Postal Service 9121789090401368593303 Learn More

**Service Type:** Priority Mail® (2-3 days)
**Package Size:** Package/Thick Envelope
**Dimensions:** 13 X 12 X 3 in
**Mailing Date:** Dec. 7, 2007
**Signature Confirmation:** Yes
**Display Postage Value on Label:** No
**Shipping Insurance:** No

**Ship From:** Alex Jackson
31324 via colinas suit 114
westlake village, CA 91362
United States

**Ship To:**
Woodland Hills, CA 91364
United States
Confirmed Residential address .

**Original Transaction**

| Date | Type | Status | Details | Amount |
|------|------|--------|---------|--------|
| Dec. 7, 2007 | Payment To Alex jackson | Completed | ... | -$269.00 USD |

**Related Transaction**

| Date | Type | Status | Details | Amount |
|------|------|--------|---------|--------|
| Dec. 7, 2007 | Add Funds from a Bank Account | Completed | Details | $269.00 USD |

Need help? If you have problems with a transaction or would like assistance settling a dispute with your seller, visit the Resolution Center. PayPal strongly recommends attempting to resolve this issue directly with the merchant or seller whenever possible.

**Description:** Adobe Photoshop CS3 FULL RETAIL VERSION for Windows

[ Return to Log ]

Home | Mass Pay | Money Market | ATM/Debit Card | Referrals | About Us | Accounts | Fees | Privacy | Fact Card
Security Center | Contact Us | Legal Agreements | Developers | Shops



About SSL Certificates

Information about FDIC pass-through insurance

**Exhibit C**



Sign Up | Log In | Help | Security Center      [Search]

Home    Personal    Business    Products & Services

## Privacy Policy for PayPal Services (including PayPal Money Market Fund)

Country:Australia (in English)|Austria (auf Deutsche)|Belgium (in English)|Belgium (en Français)|Belgium (in het Nederlands)|Canada (in English)|European Union (in English)|European Union - send only (in English)|France (en Français)|Germany (auf Deutsch)|Italy (in Italiano)|Netherlands (in English) |Netherlands (in het Nederlands)|Poland (in English)|Poland (po polsku)|Spain (en Español)|Switzerland (auf Deutsch)|United States (in English)|Other Countries (in English)|Other Countries (日本語)

This Privacy Policy applies to the United States. To view the Privacy Policy for a different country or region, please click the appropriate link above.

This policy describes the ways we collect, store, and protect your personal information. You accepted this policy when you signed up for our Service. We may amend this policy at any time by posting a revised version on our website. The revised version will be effective at the time we post it. In addition, if the revised version includes a substantial change, we will provide you with 30 days' prior notice by posting notice of the change on the "Policy Updates" page of our website. We last modified this Policy on May 14, 2008




1. How we collect information about you
2. How we use cookies
3. How we protect and store personal information
4. How we use the personal information we collect
5. How we share personal information with other PayPal users
6. How we share personal information with other parties
7. How you can restrict PayPal from sharing your personal information
8. How you can access or change your personal information
9. How you can contact us about privacy questions

**How we collect information about you**

When you visit the PayPal website, we collect your IP address and standard web log information, such as your browser type and the pages you accessed on our website.

If you open an account, we collect the following types of information from you:

- Contact information - your name, address, phone, email, Skype ID and other similar information.
- Financial information - the bank account numbers and credit card numbers that you link to your PayPal account.

Before permitting you to use our Service, we may require you to provide additional information we can use to verify your identity or address or manage risk, such as your date of birth, social security number or other information. We may also obtain information about you from third parties such as credit bureaus and identity verification services.

When you are using our Service, we collect information about your account transactions and we may collect information about your computer or other access device for fraud prevention purposes.

Finally, we may collect additional information from or about you in other ways not specifically described here. For example, we may collect information related to your contact with our customer support team or store results when you respond to a survey.

**How we use cookies**

When you access our website, we, or companies we hire to track how our website is used, may place small data files called "cookies" on your computer.

We send a "session cookie" to your computer when you log in to your account. This type of cookie helps us to recognize you if you visit multiple pages on our site during the same session, so that we don't need to ask you for your password on each page. Once you log out or close your browser, this cookie expires and no longer has any effect.

EXHIBIT C

Page 32

We also use longer-lasting cookies for other purposes such as to display your e-mail address on our sign-in form, so that you don't need to retype the e-mail address each time you log in to your account.

We encode our cookies so that only we can interpret the information stored in them. You are free to decline our cookies if your browser permits, but doing so may interfere with your use of our website.

**How we protect and store personal information**

Throughout this policy, we use the term "personal information" to describe information that can be associated with a specific person and can be used to identify that person. We do not consider personal information to include information that has been anonymized so that it does not identify a specific user.

We store and process your personal information on our computers in the US, and we protect it by maintaining physical, electronic and procedural safeguards in compliance with applicable US federal and state regulations. We use computer safeguards such as firewalls and data encryption, we enforce physical access controls to our buildings and files, and we authorize access to personal information only for those employees who require it to fulfill their job responsibilities.

**How we use the personal information we collect**

Our primary purpose in collecting personal information is to provide you with a safe, smooth, efficient, and customized experience. We may use your personal information to:

- provide the services and customer support you request;
- process transactions and send notices about your transactions;
- resolve disputes, collect fees, and troubleshoot problems;
- prevent potentially prohibited or illegal activities, and enforce our User Agreement;
- customize, measure, and improve our services and the content and layout of our website;
- send you targeted marketing, service update notices, and promotional offers based on your communication preferences;
- compare information for accuracy and verify it with third parties.

**How we share personal information with other PayPal users**

To process your payments, we need to share some of your personal information with the person or company that you are paying or is paying you. Your contact information, date of sign-up, the number of payments you have received from verified PayPal users, and whether you have verified control of a bank account are provided to other PayPal users who you transact with through PayPal.

If you are buying goods or services and pay through PayPal, we may also provide the seller with your confirmed credit card billing address to help complete your transaction with the seller. The seller is not allowed to use this information to market their services to you unless you have agreed to it.

We work with merchants to enable them to accept payments from you using PayPal. In doing so, a merchant may share information about you with us, such as your email address, when you attempt to pay that merchant. We use this information to confirm to that merchant that you are a PayPal customer and that the merchant should enable PayPal as a form of payment for your purchase.

Regardless, we will not disclose your credit card number or bank account number to anyone you have paid or who has paid you through PayPal, except with your express permission or if we are required to do so to comply with a subpoena or other legal process.

**How we share personal information with other parties**

We may share your personal information with:

- Members of the eBay Inc. corporate family -- like eBay, Shopping.com or Skype –to provide joint content and services (like registration, transactions and customer support), to help detect and prevent potentially illegal acts and violations of our policies, and to guide decisions about their products, services and communications. Members of our corporate family will use this information to send you marketing communications only if you have requested their services.
- Service providers under contract who help with parts of our business operations; (fraud prevention, bill collection, marketing, technology services). Our contracts dictate that these service providers only use your information in connection with the services they perform for us and not for their own benefit.
- Financial institutions that we partner with to jointly create and offer a product such as the PayPal Plus credit card where we share information with GE Money Bank to determine whether you should receive pre-approved offers for the PayPal Plus credit card. These financial institutions may only use this information to market PayPal-related products, unless you have given consent for other uses.
- Credit bureaus to report outstanding negative balance accounts, as allowed by law.
- Companies that we plan to merge with or be acquired by. (Should such a combination occur, we will require that the new combined entity follow this privacy policy with respect to your personal information. If your personal information could be used contrary to this policy, you will receive prior notice.)
- Law enforcement, government officials, or other third parties when
  - we are compelled to do so by a subpoena, court order or similar legal procedure
  - we need to do so to comply with law
  - we believe in good faith that the disclosure of personal information is necessary to prevent physical harm or financial loss, to report suspected illegal activity, or to investigate violations of our User Agreement.
- Other third parties with your consent or direction to do so.

PayPal will not sell or rent any of your personal information to third parties in the normal course of doing

EXHIBIT C

User Agreement - Privacy Policy - PayPal

business and only shares your personal information with third parties as described in this policy.

**How you can restrict PayPal from sharing your personal information**

Federal and state laws allow you to restrict the sharing of your personal information in certain instances. However, these laws also state that you cannot restrict other types of sharing. Because we have chosen to refrain from certain types of data sharing, the only type of sharing of your personal information that you may restrict is as follows:

If you do not want PayPal to share your personal information with other financial institutions for the purpose of marketing our jointly offered products to you, please log in to your account and uncheck the box in the Information Sharing section of the Notifications and Information Sharing page. This page can be accessed by going to the **Profile** subtab under the **My Account** tab.

You can also control how we use your contact information to market our services to you in the notifications preferences.

**How you can access or change your personal information**

You can review your personal information and make any necessary changes, at any time by logging in to your account and changing your preferences in the Profile page of the "My Account" tab.

**How you can contact us about privacy questions**

If you have questions or concerns regarding this policy, you should contact us by using this form or writing to us at PayPal, Attn: Privacy Department, P.O. Box 45950, Omaha, NE 68145-0950. PayPal maintains offices at 2211 N. First Street, San Jose, CA

PayPal is a TRUSTe licensee. If our response to your privacy concern is unsatisfactory, then you should contact TRUSTe by completing the form located at: http://www.truste.org/consumers/watchdog_complaint.php. TRUSTe will serve as a liaison to PayPal to resolve your concerns regarding our privacy practices. Please note that TRUSTe will not intervene for any other type of issue with your account.

About | Accounts | Fees | Privacy | Security Center | Contact Us | Legal Agreements | Developers | Jobs | Merchant Services | Mobile | Plus Card | Referrals | Shops | Mass Pay | Site Feedback

[+]



About SSL Certificates

Copyright © 1999-2008 PayPal. All rights reserved.
Information about FDIC pass-through insurance

Sign Up  |  Log In  |  Help  |  Security Center                          Search

## PayPal

Home    Personal    Business    Products & Services

# PayPal User Agreement

This User Agreement ("Agreement") is a contract between you and PayPal and applies to your use of PayPal's Services. You must read, agree with and accept all of the terms and conditions contained in this Agreement. We may amend this Agreement at any time by posting a revised version on our website. The revised version will be effective at the time we post it. In addition, if the revised version includes a Substantial Change, we will provide you with 30 Days' prior notice of Substantial Change by posting notice on the "Policy Updates" page of our website. We last modified this Agreement on May 14, 2008.

**Printable Versions**

User Agreement
(PDF - 383 KB).

User Agreement
(HTML).

To view PDF documents download Adobe Reader.

---

This Agreement contains fifteen sections, and you may jump directly to any section by selecting the appropriate link below. The headings and subheadings below are for reference only and do not limit the scope of each section. Some capitalized terms have specific definitions, and we have provided them in section 15. You will also find underlined words in this Agreement and on our website that hyperlink to relevant information.

1. Our Relationship With You
2. Eligibility and Types of Accounts
3. Sending Money
4. Receiving Money
5. Account Balances
6. Withdrawing Money
7. Closing your Account
8. Fees
9. Restricted Activities
10. Your Liability - Actions We May Take
11. Seller Protection Policy
12. Errors and Unauthorized Transactions
13. Disputes between Buyers and Sellers - Buyer Protection Programs
14. Disputes with PayPal
15. Definitions

### 1. Our Relationship With You.

**1.1 PayPal is only a Payment Service Provider.** PayPal helps you make payments to and accept payments from third parties. PayPal is an independent contractor for all purposes, except that PayPal acts as your agent only with respect to the custody of your funds. PayPal does not have control of or liability for the products or services that are paid for with our Service. We do not guarantee the identity of any User or ensure that a buyer or a seller will complete a transaction.

**1.2 Your Privacy.** Protecting your privacy is very important to PayPal. Please review our Privacy Policy in order to better understand our commitment to maintaining your privacy, as well as our use and disclosure of your Information.

**1.3 Privacy of Others.** If you receive Information about another PayPal User through the Service, you must keep the Information confidential and only use it in connection with the Service. You may not disclose or distribute a PayPal User's Information to a third party or use the Information for marketing purposes unless you receive the User's express consent to do so.

**1.4 Intellectual Property.** "PayPal.com", "PayPal", and all related logos, products and services described in our website are either trademarks or registered trademarks of PayPal or its licensors. You may not copy, imitate or use them without PayPal's prior written consent. In addition, all page headers, custom graphics, button icons, and scripts are service marks, trademarks, and/or trade dress of PayPal. You may not copy, imitate, or use them without our prior written consent. You may use HTML logos provided by PayPal through our merchant services, auction tools features or affiliate programs without prior written consent for the purpose of directing web traffic to the Service. You may not alter, modify or change these HTML logos in any way, use them in a manner that is disparaging to PayPal or the Service or display them in any manner that implies PayPal's sponsorship or endorsement.

**1.5 Assignment.** You may not transfer or assign any rights or obligations you have under this Agreement without PayPal's prior written consent. PayPal reserves the right to transfer or assign this Agreement or any right or obligation under this Agreement at any time.

**1.6 Notices to You.** You agree that PayPal may provide notice to you by posting it on our website, emailing it to the email address listed in your Account, or mailing it to the street address

listed in your Account. Such notice shall be considered to be received by you within 24 hours of the time it is posted to our website or email to you unless we receive notice that the email was not delivered. If the notice is sent by mail, we will consider it to have been received by you three Business Days after it is sent. You may request a paper copy of any legally required disclosures and you may terminate your consent to receive required disclosures through electronic communications by contacting PayPal as described in section 1.7 below. PayPal will charge you a Records Request Fee (per section 8) to provide a paper copy. PayPal reserves the right to close your Account if you withdraw your consent to receive electronic communications.

**1.7 Notices to PayPal.** Except as otherwise stated below in section 12 (Errors and Unauthorized Transactions) and section 14 (Disputes with PayPal), notice to PayPal must be sent by postal mail to: PayPal, Inc., Attention: Legal Department, 2211 North First Street, San Jose, California 95131.

**1.8 Transaction History.** You may access your transaction history and Balance by logging into your Account and clicking on the "History" tab.

**1.9 Regulation E Disclosures.** Our commitments to you in this Agreement related to liability for unauthorized transactions, stop-payment rights and procedures, error resolution rights and procedures, Fees, contact information, our Business Days, limitations we may impose on transfers, and your rights to statements of your transaction history, constitute disclosures under the Electronic Fund Transfer Act and Federal Reserve Board Regulation E, 12 C.F.R.§ 205.1 *et seq.*

2. **Eligibility and Types of Accounts.**

**2.1 Eligibility.** To be eligible for our Services, you must be at least 18 years old and a resident of the United States or one of the countries listed on the PayPal WorldWide page. This Agreement applies only to Users who are residents of the United States. If you are a resident of another country, you may access your agreement from our website in your country (if applicable).

**2.2 Personal, Premier and Business Accounts.** We offer three different types of Accounts: Personal, Premier and Business Accounts. You may only hold one Personal Account and either one Premier or one Business Account. By opening a Premier or Business Account and accepting the terms as outlined in this Agreement, you attest that you are not establishing the Account primarily for personal, family, or household purposes.

**2.3 Identity Authentication.** You authorize PayPal, directly or through third parties, to make any inquiries we consider necessary to validate your identity. This may include asking you for further information, requiring you to take steps to confirm ownership of your email address or financial instruments, ordering a credit report and verifying your Information against third party databases or through other sources.

3. **Sending Money.**

**3.1 Sending Limits.** We may, at our discretion, impose limits on the amount of money you can send through our Service. You can view your sending limit, if any, by logging into your Account and clicking on the View Limits link on the Account Overview page. If you have a Verified Account, we may increase the amount of, or remove, your sending limits.

**3.2 Default Funding Sources/ Ways to Pay.** When you make a payment, PayPal will fund your transaction in this order:

     a.   Balance
     b.   Instant Transfer from your bank account
     c.   PayPal Credit
     d.   Debit card
     e.   Credit card
     f.   eCheck

**Note:** We always use your Balance first. If you don't want to use your Balance, you can withdraw it before making a payment.

**3.3 Preferred Funding Source.** Preferred Funding Source. You can choose a Preferred Funding Source each time you make a payment or set up a Recurring Payment. Just click the link on a payment confirmation page and select your Preferred Funding Source. We will use your Balance before your Preferred Funding Source, unless you choose PayPal Credit or eCheck. You may select PayPal Buyer Credit or PayPal Credit Card as your Preferred Funding Source for all your payments. To do so, go to your "PayPal Plus Credit Card", "eBay MasterCard" or "Buyer Credit" link on the "Profile" tab and make the change. If you have a Balance at any time prior to a merchant processing your payment, we will use it before your Preferred Funding Source.

**3.4 Funding Source Limitations.** In order to manage risk, PayPal may limit the Funding Sources available for a transaction. If we limit the Funding Sources, we will alert you that there is a higher-than-normal level of risk associated with the payment. Such a notice does not mean that either party to the transaction is acting in a dishonest or fraudulent manner. It means there may be a higher-than-normal level of risk associated with the transaction. You may choose to continue with the transaction with the understanding that you may have fewer avenues available for dispute resolution should the transaction turn out to be unsatisfactory.

**3.5 Bank Transfers.** When Instant Transfer or eCheck is used as your Funding Source, or when you initiate an Add Funds transaction, you are requesting an electronic transfer from your bank account. For these transactions, PayPal will make electronic transfers via ACH from your bank account in the amount you specify. You agree that such requests constitute your authorization to

PayPal to make the transfers, and once you have provided your authorization for the transfer, you will not be able cancel the electronic transfer. You give PayPal the right to resubmit any ACH debit you authorized that is returned for insufficient or uncollected funds.

**3.6 Refused Transactions.** When you send money, the recipient is not required to accept it. You agree that you will not hold PayPal liable for any damages resulting from a recipient's decision not to accept a payment made through the Service. We will return any unclaimed, refunded or denied payment to your Balance within 30 Days of the date you initiate payment.

**3.7 Merchant Processing Delay.** When you send a payment to certain merchants, you are providing an Authorization to the merchant to process your payment and complete the transaction. The payment will be held as pending until the merchant processes your payment. Some merchants may delay processing your payment. In such an instance, your Authorization will remain valid for up to 30 Days. If your payment requires a currency conversion, the amount of the Exchange Rate & Fee (per section 8) will be determined at the time the merchant processes your payment and completes the transaction.

**3.8 Recurring Payments.** A Recurring Payment is a payment in which you authorize a merchant to directly charge your PayPal account on a one-time, regular, or sporadic basis. An example of a Recurring Payment is signing up for a service where you agree to allow a merchant to directly charge your PayPal account each month for a particular service you have purchased. When you establish a Recurring Payment, you will have the option of selecting a Preferred Funding Source. If you do not select a Preferred Funding Source then the Default Funding Sources will apply. Recurring Payments are sometimes called "subscriptions", "preapproved payments", or "automatic payments."

**3.9 Waiver of Notice for Certain Recurring Payments.** When a Recurring Payment is made by Instant Transfer or eCheck, you have the right to contact the merchant and insist on 10 Days advance notice before the payment is made, if the amount of the payment may vary. This notice is designed to protect you from having insufficient funds in your bank account. By establishing a Recurring Payment, you are agreeing to receive this advance notice only when your total payments to a merchant exceed the limit established between you and the merchant.

**3.10 Canceling Recurring Payments.** You may cancel a Recurring Payment at any time up to 3 Business Days prior to the date the payment is scheduled to be made. To cancel a Recurring Payment, log in to your Account, access the My Account tab, then access the Profile tab, then access the Financial Information column and click on either "Pay List" or "Recurring Payments" and follow the instructions to cancel the payment. Please keep in mind that Recurring Payments are sometimes referred to as "subscriptions" or "preapproved payments". In addition, if you cancel a Recurring Payment you may still be liable to the merchant for the payment and be required to pay the merchant through alternative means.

**3.11 Sending Money in Multiple Currencies.** When you are sending money to a merchant who has requested a currency that is different than your primary currency, you will need to specify whether you want to pay the merchant in the merchant's requested currency, or in your primary currency (in some cases, the merchant may not give you a choice). If you send money in a currency that is not your primary currency, we follow these practices:

  a. If you have a Balance in the requested currency, we will fund your transaction from your Balance.
  b. If you have a Balance in a different currency, we will perform a currency conversion and use it to fund your transaction.
  c. If you do not have a Balance, we will fund your transaction through your Default Funding Sources.
  d. If you are using your PayPal Debit Card or PayPal Virtual Debit Card your transaction will be funded with your U.S. dollar Balance, even if you have a Balance in another currency. Any required currency conversion will be performed by Visa, MasterCard, or a similar third party and may be subject to a fee by that third party.

The Exchange Rate & Fee in section 8 of this Agreement will apply whenever PayPal performs a currency conversion.

**3.12 PayPal Mobile.** PayPal Mobile is a Service that allows you to send and receive payments through your mobile phone. PayPal Mobile is not available in all countries. If you use PayPal Mobile you are responsible for any fees that your phone service provider charges for SMS, data services, etc.

**3.13 Debit Card Processing.** PayPal will process your debit card funded transactions through either the ATM debit network or the Visa/MasterCard network. If you would like to have your transaction processed through the Visa/MasterCard network, you may do so each time you make a payment by clicking the "Funding Sources" link on the payment confirmation page.

**3.14 PayPal Plug-In.** The PayPal Plug-In allows you to use your PayPal account to make payments on the internet everywhere that MasterCard is accepted - including websites that do not accept PayPal. The PayPal Plug-In works by issuing you a unique 16 digit number and an expiration date (called a "secure card") that you can use to make a purchase. The secure card cannot be used for any purchases where a physical card must be presented to a merchant for payment. In order to use the secure cards you must: (1) have either a Verified bank account, or PayPal Credit attached to your PayPal Account, (2) have a confirmed billing address, and (3) be in good standing with PayPal. The PayPal Plug-In service will use your Balance as the Default Funding Source, and will allow you to select either your bank account or PayPal Credit as Preferred Funding source if your Balance is insufficient.

### 4. Receiving Money.

**4.1 Personal Account Receiving Limit.** If you have a Personal Account, you may not receive more than $500.00 USD per month in funds when the sender selects as the "category of purchase": (a) eBay item, (b) auction goods, or (c) goods-other. Once you have received $500.00 USD in a month, we will place subsequent payments in pending status, and you will be required to upgrade to a Premier or Business Account to accept the pending payments.

**4.2 Receiving Different Types of Payments.** If you have a Personal Account you may receive Balance/Bank Funded Payments for free, and up to 5 Card Funded Payments per 12 month period for a Fee, except that you may not receive Card Funded Payments into a Personal Account for an eBay transaction. If you have a Premier or Business Account, you may receive an unlimited number of Card Funded Payments. Please note that all payments received by a Premier or Business Account will be subject to a Fee in accordance with section 8 of this Agreement.

**4.3 Use of PayPal on eBay.** Sellers who offer PayPal as a payment method in their eBay listings (either via logos or through text in the item description) must accept Card Funded Payments. Sellers must have a Premier or Business PayPal Account, or be willing to upgrade from a Personal PayPal Account to a Premier or Business Account upon receipt of a Card Funded Payment. Sellers may not communicate to buyers that they only accept, or will not accept, specific forms of PayPal payment.

**4.4 Payment Review.** Payment Review is a process by which PayPal reviews certain potentially high-risk transactions. If a payment is subject to Payment Review, PayPal will place a hold on the payment and provide notice to the seller to delay shipping the item. PayPal will conduct a review and either clear or reverse the payment. If the payment is cleared, PayPal will provide notice to the seller to ship the item. Otherwise, PayPal will reverse the payment and the funds will be returned to the buyer. All payments that clear Payment Review will be Seller Protection Policy eligible if they meet the Seller Protection Policy requirements. PayPal will provide notices to you by email and/or in the Transaction History tab of your PayPal account.

**4.5 Risk of Reversals, Chargebacks and Claims.** When you receive a payment, you are liable to PayPal for the full amount of the payment plus any Fees if the payment is later invalidated for any reason. This means that, in addition to any other liability, you will be responsible for the amount of the payment, plus the applicable Fees listed in section 8 of this Agreement if you lose a Claim or a Chargeback, or if there is a Reversal of the payment. You agree to allow PayPal to recover any amounts due to PayPal by debiting your Balance. If there are insufficient funds in your Balance to cover your liability, you agree to reimburse PayPal through other means. If the transaction is eligible under the Seller Protection Policy in section 11, PayPal will cover the amount of the Reversal or Chargeback and waive the Chargeback Fee, if applicable.

**4.6 Chargebacks Process.** In the event of a Chargeback, we will determine whether we should dispute the Chargeback with the credit card company. If we dispute the Chargeback, we will place a temporary hold on the disputed funds in your Balance until the credit card company makes a decision. The credit card company, not PayPal, will determine who wins the Chargeback.

**4.7 No Surcharges.** You agree that you will not impose a surcharge or any other fee for accepting PayPal as a payment method. You may charge a handling fee in connection with the sale of goods or services, as long as the handling fee does not operate as a surcharge and is not higher than the handling fee you charge for non-PayPal transactions.

**4.8 No Splitting Payments.** You may not split payments between a Personal Account and a Premier or Business Account by directing buyers paying with a credit card to send payments to your Premier or Business Account, and buyers paying with their Balance or bank account to send payments to your Personal Account. If you do so, we will charge you the Fees that would have applied to a Business or Premier Account.

**4.9 Receiving Money in Multiple Currencies.** You do not need to maintain a Balance in a particular currency to accept payments sent in that currency. If you already maintain a Balance in the currency in which you receive a payment, we will credit all payments received in that currency to your Balance. If you receive a payment in a currency for which you do not have a Balance, the payment will remain pending and we will ask you to manually accept or deny the payment unless you have a Premier or Business Account and have already established a preference in your Profile to automatically accept payments in that currency.

**4.10 Taxes.** It is your responsibility to determine what, if any, taxes apply to the payments you make or receive, and it is your responsibility to collect, report and remit the correct tax to the appropriate tax authority. PayPal is not responsible for determining whether taxes apply to your transaction, or for collecting, reporting or remitting any taxes arising from any transaction.

### 5. Account Balances.

**5.1 Balances.** You do not need to maintain a Balance in your Account in order to make payments. If you do hold a Balance, PayPal will hold your funds separate from its corporate funds, will not use your funds for its operating expenses or any other corporate purposes and will not voluntarily make your funds available to its creditors in the event of bankruptcy. While your funds are in our custody, unless you enroll in the Money Market Fund sweep, PayPal may combine your funds with the funds of other Users and place those Pooled Accounts in one or more bank accounts in PayPal's name. Balances in U.S. Dollars that are held in Pooled Accounts may be eligible for FDIC pass-through insurance.

**5.2 Assignment of Interest to PayPal.** You agree that you will not receive interest or other earnings on the funds that PayPal handles as your agent and places in Pooled Accounts. In consideration for your use of the Service, you irrevocably transfer and assign to PayPal any

User Agreement - PayPal                                                    Page 5 of 17

ownership right that you may have in any interest that may accrue on funds held in Pooled Accounts. This assignment applies only to interest earned on your funds, and nothing in this Agreement grants PayPal any ownership right to the principal of the funds you maintain with PayPal. In addition to or instead of earning interest on Pooled Accounts, PayPal may receive a reduction in fees or expenses charged for banking services by the banks that hold your funds.

**5.3 Money Market Fund.** You will not receive any earnings on the funds that PayPal handles for you unless you enroll in the Money Market Fund. If you enroll in the Money Market Fund, PayPal's subsidiary, PayPal Asset Management Inc., will act as your agent to use any U.S. Dollar Balance in your Account on a daily basis to purchase shares in the Money Market Fund. In addition, all Balance funded payments that you make will be funded by redeeming your shares in the Money Market Fund. For more information on the Money Market Fund, please review the prospectus.

**5.4 Negative Balances and Multiple Currencies.** If one of the currency Balances in your Account is negative for any reason, PayPal may setoff the negative Balance by using funds you maintain in a different currency Balance, or by deducting amounts you owe PayPal from money you receive into your Account, or money you attempt to withdraw or send from your Account. If you have a negative balance for a period of 21 Days or longer, PayPal will convert your negative Balance to U.S. dollars.

**5.5 Risks of Maintaining Balances in Multiple Currencies.** You are responsible for all risks associated with maintaining Balances in multiple currencies. You agree that you will not attempt to use multiple currencies for speculative trading.

**5.6 Setoff of Balances.** If you control more than one Account, then PayPal may debit one of your Accounts to setoff a negative Balance in another Account, or to pay any amounts that are 180 days past due to a PayPal affiliate, subsidiary, or parent company.

**5.7 Security Interest.** To secure your performance of this Agreement, you grant to PayPal a lien on and security interest in your Account.
**6. Withdrawing Money.**

**6.1 How to Withdraw Money.** You may withdraw funds by electronically transferring them to your bank account, requesting a physical check through the mail (U.S. Users only), or using your PayPal Debit Card (eligible Users only). Generally, we will send checks only to Confirmed Addresses, unless you have a Verified Account. We will not send checks to P.O. Boxes. If you would like us to send a check to an address that does not meet these criteria, you must contact Customer Service and provide the documentation that we request to verify your association with the address. If you fail to cash a check within 180 Days of the date of issuance, we will return the funds to your Balance (minus a Fee).

**6.2 Withdrawal Limits.** Depending on the degree to which you have Verified your Account, we may limit you to withdrawing no more than $500.00 USD per month. You can view your withdrawal limit, if any, by logging into your Account and clicking on the "View Limits" link on the "Account Overview". In addition, we may delay withdrawals of large sums of money while we screen for risk.

**6.3 Withdrawing Money in Multiple Currencies.** If you have multiple currencies in your Balance, you will be able to choose from those when you withdraw funds, but the withdrawal will take place in your home currency. The Exchange Rate & Fees stated in section 8 of this Agreement will apply if you withdraw your Balance in a currency other than your primary currency.
**7. Closing Your Account.**

**7.1 How to Close Your Account.** You may close your Account at any time by logging in to your Account, clicking on the "Profile" tab, clicking on the "Close Account" link, and then following the instructions. Upon Account closure, we will cancel any pending transactions and you will forfeit any Balances associated with Redemption Codes, unless otherwise legally prohibited. You must withdraw your Balance prior to closing your Account.

**7.2 Limitations on Closing Your Account.** You may not close your Account to evade an investigation. If you attempt to close your Account while we are conducting an investigation, we may hold your funds for up to 180 Days to protect PayPal or a third party against the risk of Reversals, Chargebacks, Claims, fees, fines, penalties and other liability. You will remain liable for all obligations related to your Account even after the Account is closed.

**7.3 Escheatment of Dormant Accounts.** If you do not log in to your Account for two or more years, PayPal may close your Account and send the Balance to your primary address. If PayPal does not close your Account and the Account remains dormant, or if PayPal does close your Account but your primary address is incorrect, PayPal may be required to escheat your Balance to your state of residency. PayPal will determine your residency based on the state listed in your primary address. If your address is unknown or registered as a foreign country, your funds will be escheated to the state of Delaware. Where applicable, PayPal will send you a notice prior to escheating or closing your Account. If you fail to respond to this notice, your Balance will be escheated to the state. If you would like to claim your funds from the state, please contact your states Unclaimed Property Administrator.
**8. Fees.**

All Fees are in US Dollars.

Personal Account Fees:

| Sending Payments (excluding Mass Payments) | Free |
|---|---|
| Receiving Card Funded Payments (limited to 5 per 12 month period) | 4.9% + $0.30 for domestic payments<br>5.9% + $0.30 for cross border payments |
| Withdrawing your Balance | Free to transfer to a bank*<br>$1.50 for a physical check*<br><br>*Plus the Exchange Rate & Fee if you are converting currency. |
| Exchange Rate & Fee | The exchange rate is the retail foreign exchange rate as determined by PayPal at the time a transaction is completed. The exchange rate is adjusted regularly, based on market conditions, and includes a 2.5% Fee above the rate at which PayPal obtains foreign currency. The 2.5% Fee is retained by PayPal. This Fee only applies when PayPal performs the currency conversion. |

Business or Premiere Account Fees:

| Sending Payments (excluding Mass Payments) | Free |
|---|---|
| Sending Payments through Mass Payments | 2% up to a maximum of $1.00 per recipient. |
| Receiving Payments (applies to all payments) | Standard rates:<br>2.9% + $0.30 for domestic payments.<br>3.9% + $0.30 for cross border payments.<br><br>Merchant rates (based on monthly transaction volume and a one-time application):<br>1.9% - 2.5% + $0.30 for domestic payments.<br>2.9% - 3.5% + $0.30 for cross border payments. |
| Withdrawing your Balance | Free to transfer to a bank*<br>$1.50 for a physical check*<br><br>*Plus the Exchange Rate & Fee if you are converting currency. |
| Chargeback Fee | $10.00 unless you are protected by the Seller Protection Policy. |
| Exchange Rate & Fee | The exchange rate is the retail foreign exchange rate as determined by PayPal at the time a transaction is completed. The exchange rate is adjusted regularly, based on market conditions, and includes a 2.5% Fee above the rate at which PayPal obtains foreign currency. The 2.5% Fee is retained by PayPal. This Fee only applies when PayPal performs the currency conversion. |
| Merchant Mobile Payments Fee | Merchants that receive payments through PayPal Mobile shall pay the following fees:<br>7.0% + $0.30 for Text to Buy payments.<br>3.0% + $0.30 for Text to Give payments. |

PayPal Debit Card Fees:

| ATM Withdrawal US | $1.00<br><br>(Plus any amounts charged by the ATM owner.) |
|---|---|
| Signature Withdrawal | $3.00 if a signature is required. |
| Non-US ATM Transaction<br><br>(Using an ATM machine that is not in the US) | 1%<br><br>This fee will apply even if the transaction does not require a currency conversion. |
| Non-US Debit Card Usage | 1% |

| | |
|---|---|
| (Making a purchase from a seller that is not in the US) | This fee will apply even if the transaction does not require a currency conversion. |
| Exchange Rate & Fee | The exchange rate is the retail foreign exchange rate as determined by PayPal at the time a transaction is completed. The exchange rate is adjusted regularly, based on market conditions, and includes a 2.5% Fee above the rate at which PayPal obtains foreign currency. The 2.5% Fee is retained by PayPal. This Fee only applies when PayPal performs the currency conversion. |

Additional Fees:

| | |
|---|---|
| Expanded Use Fee | $1.95<br><br>This amount will be refunded when you successfully complete your expanded use enrollment and send your next payment. |
| Records Request Fee | $10.00 (per item)<br><br>We will not charge you for records requested in connection with your good faith assertion of an error in your Account. |
| PayPal Plug-In | 1% for cross border payments even if a currency conversion is not required. |

**9. Restricted Activities.**

**9.1 Restricted Activities.** In connection with your use of our website, your Account, or the Services, or in the course of your interactions with PayPal, a User or a third party, you will not:

a. Breach this Agreement, the Card Processing Agreement, the Acceptable Use Policy or any other agreement that you have entered into with PayPal (including a Policy);
b. Violate any law, statute, ordinance, or regulation (for example, those governing financial services, consumer protections, unfair competition, anti-discrimination or false advertising);
c. Infringe PayPal's or any third party's copyright, patent, trademark, trade secret or other intellectual property rights, or rights of publicity or privacy;
d. Use PayPal to sell counterfeit goods.
e. Act in a manner that is defamatory, trade libelous, unlawfully threatening or unlawfully harassing;
f. Provide false, inaccurate or misleading Information;
g. Send or receive what we reasonably believe to be potentially fraudulent funds;
h. Refuse to cooperate in an investigation or provide confirmation of your identity or any Information you provide to us;
i. Attempt to double dip during the course of a dispute by receiving or attempting to receive funds from both PayPal and the seller, bank, or credit card company for the same transaction;
j. Use an anonymizing proxy;
k. Control an Account that is linked to another Account that has engaged in any of these Restricted Activities.
l. Conduct your business or use the Services in a manner that results in or may result in complaints, Disputes, Claims, Reversals, Chargebacks, fees, fines, penalties and other liability to PayPal, a User, a third party or you;
m. Have a credit score from a credit reporting agency that indicates a high level of risk associated with your use of the Services;
n. Use your Account or the Services in a manner that PayPal, Visa, MasterCard, American Express or Discover reasonably believe to be an abuse of the credit card system or a violation of credit card association rules;
o. Allow your Account to have a negative Balance;
p. Provide yourself a cash advance from your credit card (or help others to do so);
q. Access the Services from a country that is not included on PayPal's permitted countries list.
r. Disclose or distribute another Users Information to a third party, or use the Information for marketing purposes unless you receive the Users express consent to do so;
s. Send unsolicited email to a User or use the Services to collect payments for sending, or assisting in sending, unsolicited email to third parties;
t. Take any action that imposes an unreasonable or disproportionately large load on our infrastructure;
u. Facilitate any viruses, Trojan horses, worms or other computer programming routines that may damage, detrimentally interfere with, surreptitiously intercept or expropriate any system, data or Information;
v. Use any robot, spider, other automatic device, or manual process to monitor or copy our website without our prior written permission;
w. Use any device, software or routine to bypass our robot exclusion headers, or interfere or attempt to interfere, with our website or the Services;
x. Take any action that may cause us to lose any of the services from our internet service providers, payment processors, or other suppliers;
y. Use the Service to test credit card behaviors.

**10. Your Liability - Actions We May Take.**

EXHIBIT C

Page 41

**10.1 Your Liability.** You are responsible for all Reversals, Chargebacks, Claims, fees, fines, penalties and other liability incurred by PayPal, a PayPal User, or a third party caused by or arising out of your breach of this Agreement, and/or your use of the Services. You agree to reimburse PayPal, a User, or a third party for any and all such liability.

**10.2 Actions by PayPal.** If we have reason to believe that you have engaged in any Restricted Activities, we may take various actions to protect PayPal, eBay, a User, a third party, or you from Reversals, Chargebacks, Claims, fees, fines, penalties and any other liability. The actions we may take include but are not limited to the following:

a. We may close, suspend, or limit your access to your Account or the Services (such as limiting access to any of your Funding Sources, and your ability to send money, make withdrawals, or remove financial Information);
b. We may contact buyers who have purchased goods or services from you, contact your bank or credit card issuer, and warn other Users, law enforcement, or impacted third parties of your actions;
c. We may update inaccurate Information you provided us;
d. We may refuse to provide our Services to you in the future;
e. We may hold your funds for up to 180 Days if reasonably needed to protect against the risk of liability; and
f. We may take legal action against you.

PayPal, in its sole discretion, reserves the right to terminate this Agreement, access to its website, or access to the Service for any reason and at any time upon notice to you and payment to you of any unrestricted funds held in custody for you.

**10.3 Account Closure, Termination of Service, or Limited Account Access.** If we close your Account or terminate your use of our Services for any reason, we will provide you with notice of our actions. If we limit access to your Account, we will provide you with notice of our actions and the opportunity to request restoration of access if appropriate.

**10.4 eBay Item Hold.** eBay item hold. PayPal, in its sole discretion, may place a hold on a payment you receive for an eBay transaction when PayPal believes there may be a high level of risk associated with the transaction. If PayPal places a hold on your payment, it will show as "pending" in your PayPal Account.

a. Release of eBay item hold. PayPal will release the eBay item hold after 21 days unless you receive a Dispute, Claim, Chargeback, or Reversal on the transaction subject to the hold. PayPal may release the hold earlier if either of the following applies:

(i) The buyer leaves positive feedback on eBay, or (ii) PayPal can confirm delivery. PayPal will confirm delivery if you use USPS or FedEx to ship the item and (i) use PayPal shipping labels, or (ii) upload tracking information to PayPal via the transaction details page. This applies to US domestic transactions only.

b. Additional hold period. If you receive a Dispute, Claim, Chargeback, or Reversal on the transaction subject to the eBay item hold, PayPal may hold the payment in your Account until the matter is resolved pursuant to this Agreement.

**10.5 Reserves for Premier and Business Accounts.** PayPal, in its sole discretion, may place a reserve on funds held in your Premier or Business Account when PayPal believes there may be a high level of risk associated with your Account. If PayPal places a reserve on funds in your Account, they will be shown as "pending" in your PayPal Balance. If your Account is subject to a Reserve, PayPal will provide you with notice specifying the terms of the reserve. The terms may require that a certain percentage of the amounts received into your Account are held for a certain period of time, or that a certain amount of money is held in reserve, or anything else that PayPal determines is necessary to protect against the risk associated with your Account. PayPal may change the terms of the reserve at any time by providing you with notice of the new terms.

**10.6 Acceptable Use Policy Violation - User Fines.** If you violate the Acceptable Use Policy as set forth below in clauses (a), (b), (c), or (d) below, then we may hold your funds up to 180 Days, may fine you up to $2,500.00 USD for each such violation and may take legal action against you to recover additional losses we incur. You acknowledge and agree that a fine up to $2,500.00 USD is presently a reasonable minimum estimate of PayPal's damages, considering all currently existing circumstances, including the relationship of the sum to the range of harm to PayPal that reasonably could be anticipated and the anticipation that proof of actual damages may be impractical or extremely difficult. PayPal may deduct such fines directly from any existing Balance in the offending Account, or any other PayPal Account you control. The specific activities that may subject you to fines by PayPal are:

a. Using the Service to receive payments for any sexually oriented or obscene materials or services in violation of the Acceptable Use Policy;

b. Using the Service to receive payments for any narcotics, other controlled substances, steroids or prescription drugs in violation of the Acceptable Use Policy; or

c. Using the Service to receive payments for wagers, gambling debts or gambling winnings, regardless of the location or type of gambling activity in violation of the Acceptable Use policy; or

d. Using the Service to receive payments for tobacco products in violation of the Acceptable Use Policy.

User Agreement - PayPal                                           Page 9 of 17

**11. Seller Protection Policy.**

> **11.1 Benefits.** The Seller Protection Policy, which applies only to Verified Business and Premier Accounts, reimburses sellers of certain types of goods who follow certain sound selling practices. If your transaction meets the qualification requirements for the Seller Protection Policy, PayPal will reimburse you for the amount of the Chargeback or Reversal and, if applicable, waive the Chargeback Fee.

> **11.2 Coverage.** The Seller Protection Policy is limited to the following payout amounts per year for combined eligible Chargebacks and Reversals:

- $5,000.00 USD
- $6,500.00 CAD
- €4,000.00 EUR
- £3,250.00 GBP
- ¥550,000 JPY
- $7,000.00 AUD
- 6,500.00 CHF
- 3,300.00 NOK
- 40,000.00 SEK
- 31,000.00 DKK
- 16,000.00 PLN
- 1,080,000 HUF
- 120,000.00 CZK
- $8,100.00 SGD
- $38,000.00 HKD
- $7,700.00 NZD
- $55,000.00 MXN
- 20,000.00 ILS

Please note that the combined annual total may not exceed the limit for any one currency.

A Chargeback is covered if it was due to non-receipt of merchandise, or an unauthorized payment. A Reversal is covered if it was due to an unauthorized payment. The Seller Protection Policy does not cover Claims for Significantly Not as Described or for non-receipt of merchandise, or sales of intangible goods, services, or licenses for digital content. PayPal Claims are not covered by the Seller Protection Policy. For more information on winning a PayPal Claim see the Buyer Protection Programs section of this agreement.

> **11.3 Qualification Requirements.** In order to qualify for coverage under the Seller Protection Policy, you must meet the following requirements:

> a. You must have a Verified Business or Verified Premier Account at the time of the transaction,

> b. The transaction must be between a US, UK or Canadian buyer and a US, UK or Canadian seller,

> c. The payment must be listed as Seller Protection Policy Eligible on the Transaction Details page, or cleared by PayPal through Payment Review,

> d. You must accept a single payment from one PayPal Account for the purchase,

> e. You must not charge a surcharge for accepting PayPal,

> f. You must ship the purchased item to the address listed on the Transaction Details page,

> g. You must ship the item to the buyer within 7 Days of receiving payment. Or, if you are selling a made-to-order or pre-ordered item on eBay, you must ship the item within the time-frame you specified in your eBay listing as long as the buyer agreed to the extended time-frame at the time of payment.

> h. You must have trackable online proof of delivery from an approved shipper to the address on the Transaction Details page. For transactions involving $250.00 USD or more, you must provide a proof of receipt that was signed or otherwise acknowledged by the buyer and can be viewed online, (If you paid in a currency other than US dollars, the following amounts apply for this section: $325.00 CAD, €200.00 EUR, £150.00 GBP, ¥28000.00 JPY, $350.00 AUD, 330.00 CHF, 1,600.00 NOK, 2,000.00 SEK, 1,500.00 DKK, 800.00 PLN, 55000.00 HUF, 6,000.00 CZK, $400.00 SGD, $2,000.00 HKD, $380.00 NZD, $2,750.00 MXN, 1,000.00 ILS), and

> i. You must respond to PayPal's requests for information within the time period PayPal specifies.

> j. Additional qualification requirement for unauthorized payments: The address on the "Transaction Details" page that you ship to must be a Confirmed Address. This requirement does not apply to Chargebacks due to non-receipt of merchandise.

Please note that in order to qualify for our Seller Protection Policy you must ship the item as required in this section. If you hand deliver an item, or provide delivery in any manner other than required in this section, your transaction will not qualify for the Seller Protection Policy.

> **11.4 Process.** If there is a Chargeback or Reversal, and the seller's account is a Verified Business or Premier Account, we will place a temporary hold on the transaction amount, and evaluate the transaction to determine whether it is eligible for our Seller Protection Policy. If the sellers Account is not Verified, or is a Personal Account, then the amount of the payment will be automatically debited by PayPal, and PayPal will transfer the funds back to the buyers Account, as appropriate. If we determine that the transaction qualifies for Seller Protection, we will lift the temporary hold and restore your access to the funds. Please note that eligibility under the Seller Protection Policy is not a requirement to win a Claim filed by a buyer under section 13.

**12. Errors and Unauthorized Transactions.**

**12.1 Identifying Errors and/or Unauthorized Transactions.** You can inspect your transaction history at any time by logging in to your Account on the PayPal website and clicking the History tab. It is very important that you immediately notify PayPal if you have reason to believe any of the following activities have occurred: (i) there has been an unauthorized transaction from your Account; (ii) there has been an unauthorized access to your Account; (iii) your password or PayPal Mobile PIN has been compromised; (iv) your PayPal Debit Card or PayPal Mobile-activated phone has been lost, stolen, or deactivated, or (v) someone has transferred or may transfer money using your Account without your permission (collectively called "Improper Account Access").

**12.2 Notifying PayPal of Errors and/or Unauthorized Transactions.** To notify us if you believe there has been or will be an error or unauthorized transaction on your Account, telephone PayPal Customer Service at (402) 935-7733, contact us using this report form, or write to PayPal, Attn: Error Resolution Department, P.O. Box 45950, Omaha, NE 68145-0950. If you initially provide information to us via the telephone, we may require that you send your complaint or question in writing within 10 Business Days after the phone contact. Please complete the affidavit form and submit it online or mail it to PayPal, Attn: Error Resolution Department, P.O. Box 45950, Omaha, NE 68145-0950.

**12.3 Review of Reports of Errors and/or Unauthorized Transactions.** We will advise you of the results of our investigation within 10 Business Days after we receive your notice (or 20 Business Days for transactions done at a point of sale terminal or outside the United States). If we have made an error, we will correct it promptly. If we need more time, however, we may take up to 45 Days to investigate your complaint or question (and 90 Days for transactions made at a point of sale terminal or outside the United States). If we decide that we need more time, we will provisionally re-credit your Account for the amount you think is in error within 10 Business Days after we receive your notice; so that you will have use of the money during the time it takes us to complete our investigation. If you initially provided information to us via the telephone and we do not receive your complaint or question in writing within 10 Business Days after your oral notice, we are not required to provisionally re-credit your Account.

At the end of our investigation, we will advise you of the results within 3 Business Days. If we determine that there was no error, we will send you a written explanation and we may debit any provisional credit that we previously credited to you in relation to the alleged error. You may ask for copies of the documents that we used in our investigation.

**12.4 Liability for Unauthorized Transactions.** If you report and we verify that there has been an Improper Account Access related to your Account, we will reimburse you in full for all unauthorized transactions sent from your Account that occur within 60 Days of the time that you knew or should have known about the Improper Account Access. If you do not report the Improper Account Access to PayPal within 60 Days of the time that you knew or should have known about it, we will still reimburse you in full for all unauthorized transactions that took place within or before that 60-Day period, but you may be liable for all unauthorized transactions resulting from the Improper Account Access that occur on Day 61 and beyond (if we can demonstrate that we could have avoided any losses if you had notified us in a timely manner).

**12.5 Errors.** If we discover a processing error, we will rectify the error. If the error resulted in your receiving less money than you were entitled to, PayPal will credit your Account for the difference. If the error results in you receiving more money than you were entitled to, PayPal may debit the extra funds from your PayPal Account. If the error resulted in our not completing a transaction on time or in the correct amount, we will be liable for your losses or damages directly and proximately caused by this failure, unless:

   a. through no fault of ours, you did not have enough available funds to complete the transaction,
   b. our system was not working properly and you knew about the breakdown when you started the transaction, or
   c. circumstances beyond our control (such as fire or flood or loss of Internet connection) prevented the transaction, despite our reasonable precautions.

**13. Disputes between Buyers and Sellers - Buyer Protection Programs.**

**13.1 Buyer Protection Programs.** If you buy an item using PayPal and either do not receive the item or receive an item that you believe is Significantly Not as Described by the seller, we encourage you to open a Dispute with the seller in our Resolution Center. By doing so, you will initiate our Online Dispute Resolution Process—a step-by-step system designed to facilitate communication between you and the seller in order to get resolution of the issue. If your dialogue with the seller fails to produce a satisfactory result, you can then escalate the Dispute into a Claim that we will evaluate for reimbursement under one of the following programs:

   a. PayPal Buyer Complaint Policy - Our best efforts program to reimburse Users for losses only to the extent we are able to recover the funds from sellers.
   b. PayPal Buyer Protection Policy - Our program to reimburse Users for losses for up to (i) $2,000.00 USD (Top Tier Coverage Amount) for eligible items purchased on eBay and (ii) up to $200.00 USD (Basic Tier Coverage Amount) for all other eligible items purchased on eBay and for eligible items purchased on eBay. Please see section 13.9 to determine whether Top Tier Coverage Amount or Basic Tier Coverage Amount applies to your eBay purchase.
   c. Buyer Protection for eBay Express - Our program to reimburse Users for the full amount of losses for items purchased on eBay Express.
   d. Extended Buyer Protection with PayPal Credit - Our program to reimburse Users for the full transactional amount of the items purchased using PayPal Credit.

These programs only cover payments for tangible, physical goods. All other payments, such as payments for intangibles, services, airline flight tickets, or licenses and other access to digital content are not covered by any Buyer Protection Program that we offer (but may be covered by Chargeback rights).

**13.2 Assumption of Rights.** If PayPal pays out a Claim, Reversal or Chargeback that you file against a recipient of your payment, you agree that PayPal assumes your rights against the recipient and third parties related to the payment, and may pursue those rights directly or on your behalf, in PayPal's discretion.

**13.3 Filing Deadlines.** We will not grant any Claim unless you first initiate a Dispute in our Resolution Center within 45 Days of the date of the relevant payment and then escalate the Dispute into a Claim within 20 Days of the date you file your Dispute. It is your responsibility to keep track of the deadlines under this section.

**13.4 Online Dispute Process.** Once you file a Dispute as a buyer, PayPal will notify the seller of the Dispute, and while the Dispute is open, you and the seller are able to access the details of the Dispute via the Resolution Center and post messages to each other in connection with the Dispute. Any message you post is viewable by PayPal and the other party to the Dispute. If the Dispute is escalated to a Claim, PayPal may review and use the content of all posted messages during evaluation of the Claim. If you subsequently file a Chargeback, PayPal may use the content of any messages to dispute the Chargeback. You may not post any message that is offensive, discourteous, false, misleading, profane, abusive, threatening or otherwise inappropriate.

**13.5 Closing Online Disputes.** You or we will close all Disputes in one of the following ways:

    a. Closing the Dispute as resolved. The buyer can close the Dispute as resolved from the time it is filed until 20 Days after it is filed. Once a buyer closes a Dispute as resolved, we will not allow it to be reopened or escalated to a Claim.
    b. Escalating the Dispute into a Claim. Either party may close the Dispute by escalating the Dispute into a Claim within 20 Days of the date the Dispute is filed.
    c. Issuing a full refund. The seller may choose to close the Dispute by issuing a full refund to the buyer. If we process a full refund in this way, we will close the Dispute and not allow escalation to a Claim. If the seller does not have a sufficient Balance to close the Dispute but tries to close the Dispute by issuing a full refund, we will automatically escalate the Dispute into a Claim.
    d. Reaching other settlement. If the seller and buyer agree to a settlement other than a full refund, both parties agree to reflect the agreed settlement in the messages posted in the Resolution Center (so that we avoid resolving the Claim in a contrary manner).
    e. Dispute auto-closure after 20 Days. We will automatically close Disputes 20 Days after initiation if the buyer has not escalated it to a Claim within that time period. Once we close a Dispute in this way, we will not allow the buyer to re-open the Dispute or file a Claim relating to the transaction. In certain circumstances, we may escalate a Dispute into a Claim (for example, where a number of other buyers have opened Disputes against a seller who has failed to respond to the notices of Dispute).

**13.6 Escalating Disputes into Claims.** If you are unable to reach a resolution with the seller within 20 Days of filing the Dispute or if you have reached a resolution with the seller but it has not been fully executed (for example: you have not received the refund or you have not received an exchange item that the seller agreed to send you), you should escalate the Dispute into a Claim in order to maintain your rights under the Buyer Protection Programs. You cannot file a Claim for reimbursement without first filing a Dispute in the Resolution Center.

**13.7 Claims Procedures.** If you escalate a Dispute into a Claim, we will gather information from you and the seller and determine eligibility for reimbursement under the Buyer Protection Programs. Here are some important things to remember about the Claim process:

    a. If a buyer files a Claim asserting receipt of a Significantly Not as Described item, we will generally require the buyer to return the item to the seller at the buyers expense and to Viewable Online Proof of Delivery. If the item is over $250.00 USD or equivalent, Viewable Online Signature Confirmation must also accompany theViewable Online Proof of Delivery. In some circumstances, we may require the buyer to send the item to us or to a third party specified by us, to obtain documentation from a qualified third party substantiating the Claim, or to provide evidence that the item has been destroyed. In some instances, we may ask a buyer to support a Claim by filing and supplying a copy of a police report.
    b. If a buyer files a Claim for Significantly Not as Described and alleges that an item is counterfeit, PayPal may require the buyer and seller to provide affidavits and other evidence to support their positions. PayPal shall make the final determination whether to grant the buyer's claim based on the provided evidence, as well as third party evidence and evaluations. If PayPal grants the buyer's claim, the buyer must return the item to PayPal or a third party (as directed by PayPal). PayPal, in its discretion, may require the buyer or the seller to pay for the return shipping costs. Once the item has been received by PayPal or the third party, the seller must refund the transaction amounts (including the original shipping costs) to the buyer. If PayPal grants the buyer's claim, the seller may not receive the item back.
    c. If a buyer initiates a Dispute/Claim and the amount in Dispute is greater than $100, PayPal will place the disputed amount (to the extent it remains in the seller's Account) on hold until the Dispute/Claim is resolved, and the seller will not be able to withdraw this amount while the Dispute/ Claim remains unresolved.
    d. Other than adding information you may not edit or change a Claim after filing it.
    e. We may ask a buyer to identify the minimum refund that would be acceptable to settle the

Claim. If you specify a refund amount that is less than the amount of the original transaction, and the seller agrees to refund the amount you specified, PayPal will consider the Claim to be successfully resolved.

   f.  After we close a Claim in favor of a buyer, a seller may appeal our decision on the Claim; however, PayPal generally will only grant the appeal if the seller is able to prove that the buyer sent the item back to the seller in a condition significantly different than when the Claim was made (other than normal wear from shipping). PayPal does not guarantee recovery of money from a buyer for a seller if a seller wins an appeal.

   g.  If the buyer claims that the item was not received, the seller must be able to prove that the item was delivered to the address listed on the Transaction Details page by providing PayPal with a Viewable Online Proof of Delivery For transactions equal to $250.00 USD (or the equivalent in the currency of the transaction) or more in value, the seller will also need to provide a Viewable Online Signature Confirmation.

**13.8 Claims Eligibility.** In addition to the other limitations called out within this Agreement, the following limitations apply to Claims:

   a.  The PayPal Buyer Complaint Policy only applies to items purchased outside of eBay or eBay Express, the PayPal Buyer Protection Policy only applies to items purchased on eBay or to payments funded through your debit card and processed through the ATM debit network. To determine whether your debit card funded payment was processed through the ATM/debit network, look to see if "ATM/Debit" appears next to the card payment in your PayPal history log. Buyer Protection for eBay Express only applies to items purchased on eBay Express. The Extended Buyer Protection with PayPal Credit applies to items purchased using PayPal Buyer Credit, PayPal Pay Later or PayPal Credit Card through PayPal. Extended Buyer Protection with PayPal Credit does not apply to items purchased with PayPal Credit Card not through PayPal. For example: Extended Buyer Protection with PayPal Credit does not apply when you use your PayPal Credit Card to make a purchase offline. Extended Buyer Protection with PayPal Credit does not apply to payments made through PayPal Mobile, unless such payments are for eBay purchases.

   b.  Only registered PayPal members in good standing are eligible for reimbursement. If you purchase an item on eBay Express and you are not a registered PayPal User, you will have to sign up for a PayPal Account in order to seek reimbursement via the process outlined here.

   c.  Claims must be for payments for tangible, physical goods that can be shipped, and not all other payments, such as payments for intangibles, for services or for licenses and other access to digital content. For purposes of eBay items, motor vehicles and Live Auctions are not covered.

   d.  Items prohibited in the PayPal Acceptable Use Policy are ineligible for coverage.

   e.  For purposes of eBay items, the buyer must have sent a single PayPal payment for the full price of the item to the PayPal Account specified by the seller in the listing, and must have either used the Pay Now button or associated the payment with the eBay listing by entering the item number into the PayPal payment instructions. If the buyer sent payment to a different PayPal Account or by a different method, even at the seller's request, the transaction will not be covered.

   f.  For purposes of eBay Express items, the buyer must have completed the transaction by paying on the eBay Express website using either a PayPal Account or a credit card.

   g.  Buyers may only receive one reimbursement per eBay or eBay Express listing.

   h.  For multiple-items paid with a single PayPal payment, each qualified item is eligible for up to the maximum payout in coverage, but buyers may file only one Claim per PayPal payment. If you purchased multiple qualified items with a single payment, you must identify all the items on which you are seeking reimbursement in a single Claim.

Extended Buyer Protection with PayPal Credit applies to items purchased on eBay that are either not delivered or Significantly Not as Described and to items purchased outside of eBay that are not delivered.

**13.9 eBay Items Eligible for PayPal Buyer Protection.** Every item on eBay (except Live Auctions and vehicles) that meets the above requirements is eligible for PayPal Buyer Protection up to $200.00 USD (Basic Tier Coverage Amount), but items are only eligible for PayPal Buyer Protection up to $2,000.00 USD (Top Tier Coverage Amount) and should be identified as eligible items in the eBay listing if:

   a.  The seller's eBay feedback rating is at least 50;
   b.  At least 98% of the seller's eBay feedback is positive;
   c.  The seller has a Verified Premier or Verified Business Account in good standing;
   d.  The listing was on an eligible eBay site (eBay.com and certain other eBay sites self identified as such)
   e.  PayPal is listed as an acceptable payment method; and
   f.  The seller is a PayPal User from one of the following countries:

| | |
|---|---|
| - Argentina | - Italy |
| - Austria | - Jamaica |
| - Australia | - Japan |
| - Belgium | - Korea |
| - Brazil | - Mexico |
| - Canada | - Netherlands |
| - Chile | - New Zealand |
| - China | - Norway |
| - Czech Republic | - Poland |
| - Denmark | - Portugal |
| - Ecuador | - Singapore |
| - Finland | - Sweden |

- France
- Germany
- Greece
- Hong Kong
- Hungary
- India
- Ireland

- Spain
- Switzerland
- Taiwan
- Thailand
- United Kingdom
- United States
- Uruguay

**13.10 Protection for Purchases on non-U.S. eBay websites.**

a. This chart shows the maximum amount of protection that you will receive based on the website from which you made your purchase. We will reimburse you in the currency of the original PayPal payment, up to the maximum payout listed in the table below:

| Country | Eligible eBay Website | Basic Tier | Top Tier |
|---|---|---|---|
| The United States | www.ebay.com | $200.00 USD | $2,000.00 USD |
| Australia | www.ebay.com.au | $400.00 AUD | $3,000.00 AUD |
| Austria | www.ebay.at | €1,000.00 EUR | Not applicable |
| Belgium | www.ebay.be or www.befr.ebay.be | €200.00 EUR | €1,000.00 EUR |
| Canada | www.ebay.ca or www.cafr.ebay.ca | $315.00 CAD | $2,000.00 CAD |
| France | www.ebay.fr | €200.00 EUR | €1,000.00 EUR |
| Germany | www.ebay.de | €1,000.00 EUR | Not applicable |
| Ireland | www.ebay.ie | €200.00 EUR | €1,000.00 EUR |
| Italy | www.ebay.it | €200.00 EUR | €1,000.00 EUR |
| Netherlands | www.ebay.nl | €200.00 EUR | €1,000.00 EUR |
| Spain | www.ebay.es | €200.00 EUR | €1,000.00 EUR |
| Switzerland | www.ebay.ch | 1,500.00 CHF | Not applicable |
| The United Kingdom | www.ebay.co.uk | £150.00 GBP | £500.00 GBP |

b. **eBay Standard Purchase Protection Program**

If you make a purchase from one of the eBay websites listed below, you may be eligible for the eBay Standard Purchase Protection Program (eBay SPPP) instead of the PayPal Buyer Protection Policy. The eligibility requirements for eBay SPPP are the same eligibility requirements for PayPal Buyer Complaint Policy as listed above. eBay Standard Purchase Protection Program is our program to reimburse buyers for losses up to the applicable coverage amount minus the processing cost for purchases made on the eBay SPPP websites.

The final price of the item purchased must be over the applicable processing cost. Multiple listings cannot be combined into one Claim to become eligible, even if purchased from the same seller. Except that items purchased through multiple item auction (Dutch auctions) are eligible, provided the combined value of all items purchased through a single listing is over the applicable processing cost. Buyers may submit up to three eBay Standard Purchase Protection Program claims per six-month period.

| Country | eBay SPPP Website | Coverage Amount | Processing Cost |
|---|---|---|---|
| Hong Kong | www.ebay.com.hk | 1500 HKD | 200 HKD |
| New Zealand | www.ebay.com/nz | 300 NZD | 40 NZD |
| Poland | www.ebay.pl | 650 PLN | 80 PLN |
| Singapore | www.ebay.com.sg | 320 SGD | 40 SGD |
| Sweden | www.ebay.se | 1600 SEK | 200 SEK |

**13.11 Significantly Not As Described.** To the extent that we provide reimbursement for losses for items that are Significantly Not As Described when received by the buyer (which we may do under all programs except the Buyer Complaint Policy), an item is Significantly Not as Described if the seller clearly misrepresented the details of the item in a way that affects its value or usability. This does not include cases where the buyer is merely disappointed with the item or where the item did not meet the buyer's expectations. Here are some of the reasons that an item may be considered Significantly Not as Described:

a. The item is a completely different item than that represented by the seller in the listing, e.g. an audio book instead of a printed book, a desktop computer instead of a laptop, a picture of an item instead of the actual item; or an empty box.
b. The condition of the item is significantly different. For example, if the item has clearly been used multiple times rather than almost new or still in box or is obviously repackaged rather than mint.
c. The item is unusable and was not disclosed as such. For example, if there are missing major parts or components, will not function or turn on or is spoiled or past a relevant date. This applies to the item in its received state, no matter what the condition when it was shipped.
d. The item was advertised as authentic but is not authentic. For example, a fake or knock-off item that was advertised as authentic or a completely different or inferior brand of a similar product.
e. The item is missing a major portion or quantity. For example, if the buyer ordered four

dozen golf balls but only received one dozen or four golf balls, or the item is missing a primary component, like a blender missing a top or a coffee maker missing the bottom plate.

An item is not Significantly Not as Described if:

a. The defect in the item was correctly described by the seller. For example, if the item description states one of the following: Item may not work properly, Item is missing some parts, or See picture for scratches or damages.
b. The item was properly described but you didn't want it after you saw it in person.
c. The description could have been reasonably misinterpreted. For example, if the item is a slightly different color than advertised (e.g. the item is aquamarine but was advertised as teal).
d. The item was properly described but did not meet your expectations.
e. The item has minor scratches and was listed as used condition.

Please note that these are representative examples. There may be other circumstances where the characteristics of the item or the situation are not exactly covered in the item description but do not render the item Significantly Not as Described. PayPal encourages all buyers and sellers to communicate with each other before and after the transaction to prevent these issues from occurring. We may make a decision as to whether an item is Significantly Not as Described if the buyer and seller cannot agree. For items that we believe do not qualify as Significantly Not as Described, we still encourage the buyer and seller to find an equitable solution.

**13.12 Buyer Complaint Policy Benefits.** If we grant a Claim under our Buyer Complaint Policy, PayPal will seek to collect from the seller by debiting the seller's PayPal Account up to the amount of your loss, and you will receive a recovery to the extent that the seller has funds available in the Account at the time we debit the seller's Account. If there is more than one Claim against the same Account, we will process the Claims in the order they are filed, and will pay out on each granted Claim up to the amount of funds in the seller's Account at the time the Claim is awarded, but not more than the amount of the Claim.

**13.13 Buyer Protection for eBay Express Benefits.** If we grant a Claim under Buyer Protection for eBay Express, we will reimburse you for losses up to the full amount of your eBay Express purchase. Your reimbursement will be paid in the currency of the original PayPal payment up to the full purchase amount.

**13.14 Extended Buyer Protection with PayPal Credit Benefits.** If we grant a Claim on a purchase you made with PayPal Buyer Credit, PayPal Pay Later or with the PayPal Credit Card through PayPal, we will reimburse you in the currency of the payment for losses up to the full amount of your purchase.

**13.15 Relationship between PayPal Protection Programs and Chargeback Rights.** The following information relates to reimbursement for losses from purchases where you used a credit card to fund a PayPal purchase:

a. Credit card chargeback rights, if they apply, are broader than PayPal Buyer Protection: among other things chargeback rights are not limited to $2,000.00 USD per transaction, can be filed more than 45 days after the transaction, and may cover unsatisfactory items even if they are not Significantly Not as Described.
b. You can choose to file a Dispute through our Online Dispute Resolution process and escalate the Dispute into a Claim or to exercise your Chargeback rights. However, you cannot pursue both at the same time or seek a double recovery. If you initiate a Dispute through the Online Dispute Resolution process and you then, while the Dispute or Claim is pending, file a Chargeback, PayPal will cancel your Dispute or Claim, and you will have to rely solely on your Chargeback rights.
c. If you close your Dispute or it is otherwise closed, or if you cancel a Claim or it is denied or results in no refund, you may still be able to pursue Chargeback rights.
d. If you timely file a Dispute and then escalate it to a Claim, and we do not complete processing of that Claim until after your credit card issuers imposed deadline for filing a Chargeback or after your banks deadline for filing an Electronic Fund Transfer Act dispute, and you recover less than the full amount you would have been entitled to recover from the credit card issuer or the bank, we will reimburse you for the remainder of your loss (minus any amount you have already recovered from the seller or any other Buyer Protection Program). PayPal reserves the right to contest Chargebacks, in accordance with the rules of the applicable card issuer or card association.
e. Buyers should follow the sellers return policy as stated on their auction or website. If a return policy is not available, the buyer should work directly with the seller to return the item. Buyers may be required to prove that the seller received the returned item and should obtain Viewable Online Proof of Delivery from an approved shipper. Return shipping is at the buyer's expense unless otherwise agreed to by the seller.

**13.16 Seller and Buyer Cooperation.** If you or another User you have sent money to or received money from initiates a Dispute, Claim or Chargeback, you agree to provide to any requesting party on a timely basis any documentation necessary to resolve the Dispute, Claim or Chargeback. You also agree to fully cooperate with PayPal in all aspects of our Dispute and Claim processes, and to reimburse your Account to the extent it goes negative because we decide to grant a Claim submitted by another User. We will cancel Claims of buyers who do not respond to inquiries regarding the Claim within the time specified. Sellers who fail to respond in a timely manner to our inquiries regarding a Claim will lose the Claim and lose any right to appeal, and we will reimburse the buyer from the seller's PayPal Account.

**13.17 Release of PayPal.** If you have a dispute with one or more Users, you release PayPal (and

our officers, directors, agents, joint ventures and employees) from any and all Claims, demands and damages (actual and consequential) of every kind and nature arising out of or in any way connected with such disputes. In addition, you waive California Civil Code §1542, which says: A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if not known by him must have materially affected his settlement with the debtor.

**14. Disputes with PayPal.**

**14.1 Contact PayPal First.** If a dispute arises between you and PayPal, our goal is to learn about and address your concerns and, if we are unable to do so to your satisfaction, to provide you with a neutral and cost effective means of resolving the dispute quickly. Disputes between you and PayPal regarding our Services may be reported to Customer Service online through the PayPal Help Center at any time, or by calling (402) 935-2050 from 6 AM to midnight Central Time.

**14.2 Alternative Dispute Resolution.** If you are unable to resolve your issue by working directly with us, PayPal will consider reasonable requests to resolve disputes through alternative dispute resolution procedures, such as mediation or binding arbitration as alternatives to litigation. Accordingly, you and PayPal agree to resolve any claim in accordance with this Agreement, or as otherwise agree to in writing.

**14.3 Arbitration.** For any claim (excluding claims for injunctive or other equitable relief) where the total amount of the award sought is less than $10,000.00 USD, the party requesting relief may elect to resolve the dispute in a cost effective manner through binding non-appearance-based arbitration. If a party elects arbitration, that party will initiate such arbitration through an established alternative dispute resolution (ADR) provider mutually agreed upon by the parties. The ADR provider and the parties must comply with the following rules: a) the arbitration shall be conducted by telephone, online and/or be solely based on written submissions, the specific manner shall be chosen by the party initiating the arbitration; b) the arbitration shall not involve any personal appearance by the parties or witnesses unless otherwise mutually agreed by the parties; and c) any judgment on the award rendered by the arbitrator may be entered in any court of competent jurisdiction.

**14.4 Law and Forum for Disputes.** Except as otherwise agreed by the parties or as described in section 14.3 above, you agree that any claim or dispute you may have against PayPal must be resolved by a court located in either Santa Clara County, California, or Omaha, Nebraska. You agree to submit to the personal jurisdiction of the courts located within Santa Clara County, California, or Omaha, Nebraska for the purpose of litigating all such claims or disputes. This Agreement shall be governed in all respects by the laws of the State of California, without regard to conflict of law provisions.

**14.5 Improperly Filed Litigation.** All claims you bring against PayPal must be resolved in accordance with section 14 of this Agreement. All claims filed or brought contrary to section 14 shall be considered improperly filed a breach of this Agreement. Should you file a claim contrary to section 14, PayPal may recover attorneys fees and costs (including in-house attorneys and paralegals) up to $1,000.00 USD, provided that PayPal has notified you in writing of the improperly filed claim, and you have failed to promptly withdraw the claim.

**14.6 No Waiver.** Our failure to act with respect to a breach by you or others does not waive our right to act with respect to subsequent or similar breaches.

**14.7 Limitations of Liability.** IN NO EVENT SHALL WE, OUR PARENT, EMPLOYEES OR OUR SUPPLIERS BE LIABLE FOR LOST PROFITS OR ANY SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES ARISING OUT OF OR IN CONNECTION WITH OUR WEB SITE, OUR SERVICE, OR THIS AGREEMENT (HOWEVER ARISING, INCLUDING NEGLIGENCE). Some states do not allow the exclusion or limitation of incidental or consequential damages so the above limitation or exclusion may not apply to you. OUR LIABILITY, AND THE LIABILITY OF OUR PARENT, EMPLOYEES AND SUPPLIERS, TO YOU OR ANY THIRD PARTIES IN ANY CIRCUMSTANCE IS LIMITED TO THE ACTUAL AMOUNT OF DIRECT DAMAGES.

**14.8 No Warranty.** PAYPAL, OUR PARENT, EMPLOYEES AND OUR SUPPLIERS PROVIDE OUR SERVICES AS IS AND WITHOUT ANY WARRANTY OR CONDITION, EXPRESS, IMPLIED OR STATUTORY. PAYPAL, OUR PARENT, EMPLOYEES AND OUR SUPPLIERS SPECIFICALLY DISCLAIM ANY IMPLIED WARRANTIES OF TITLE, MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE AND NON-INFRINGEMENT. PayPal does not have any control over the products or services that are paid for with our Service and PayPal cannot ensure that a buyer or a seller you are dealing with will actually complete the transaction. PayPal does not guarantee continuous, uninterrupted or secure access to our Service, and operation of our site may be interfered with by numerous factors outside of our control. PayPal will make reasonable efforts to ensure that requests for electronic debits and credits involving bank accounts, credit cards, and check issuances are processed in a timely manner but PayPal makes no representations or warranties regarding the amount of time needed to complete processing because our Service is dependent upon many factors outside of our control, such as delays in the banking system or the U.S. or international mail service. Some states do not allow the disclaimer of implied warranties, so the foregoing disclaimers may not apply to you. This paragraph gives you specific legal rights and you may also have other legal rights that vary from state to state.

**14.9 License Grant.** PayPal and its licensors grant you a limited nonexclusive license to use PayPal's software in accordance with the documentation, including all updates, upgrades, new versions and replacement software, as described herein for your personal use only. You may not rent, lease or otherwise transfer your rights in the software to a third party. You must comply with the implementation and use requirements contained in all PayPal documentation accompanying the Services. If you do not comply with PayPal's implementation and use requirements you will be liable for all resulting damages suffered by you, PayPal and third parties. You agree not to alter,

reproduce, adapt, distribute, display, publish, reverse engineer, translate, disassemble, decompile or otherwise attempt to create any source code which is derived from the software. You acknowledge that all rights, title and interest to PayPal's software are owned by PayPal.

**14.10 Indemnification.** You agree to defend, indemnify and hold PayPal, its parent, officers, directors and employees harmless from any claim or demand (including attorneys fees) made or incurred by any third party due to or arising out of your breach of this Agreement and/or your use of the Services.

**14.11 State Agencies.** In addition to reporting complaints against PayPal directly to PayPal as described in section 14 above, you may report complaints to the Complaint Assistance Unit of the Division of Consumer Services of the California Department of Consumer Affairs by contacting them in writing at 400 R Street, Sacramento, California 95814, or by telephone at (800) 952-5210. Florida residents may contact the Florida Department of Financial Services in writing at 200 East Gaines Street, Tallahassee, Florida, 32399, or by telephone at 1-800-342-2762. If you are a California resident, you have a right to receive the same information in section 1.7 by email. To make such a request, send a letter to PayPal at the address listed in section 1.6, include your email address, and request the information provided in section 1.7.

**14.12 Complete Agreement.** This Agreement sets forth the entire understanding between you and PayPal with respect to the Service. Sections 1, 7, 8, 10, 14 and 15, as well as any other terms which by their nature should survive, will survive the termination of this Agreement. If any provision of this Agreement is held to be invalid or unenforceable, such provision shall be struck and the remaining provisions shall be enforced.

**15. Definitions**

a.   **"ACH"** means the Automated Clearing House network.
b.   **"Account"** or **"PayPal Account"** means a Personal, Business or Premier Account.
c.   **"Add Funds"** means your ability to add money into your Account.
d.   **"Agreement"** means this agreement including all subsequent amendments.
e.   **"Approved Shipper"** means a shipping provider offering services that meet PayPal's standards herein for Viewable Online Proof of Delivery, and Viewable Online Signature Confirmation. Approved Shippers include USPS (United States Postal Service), UPS (United Parcel Service), and FedEx. For additional Approved Shippers visit PayPal's online Security Center.
f.   **"Authorize"** or **"Authorization"** means you authorize a merchant to collect a payment from your Account.
g.   **"Balance"** means any money that you have in your PayPal Account. The terms "money" and "funds" are used interchangeably in this Agreement.
h.   **"Balance/Bank Funded Payment"** means a payment that is fully funded through Instant Transfer, eCheck and/or Balance.
i.   **"Business Account"** and **"Premier Account"** means an Account used primarily for business purposes and not for personal, family, or household purposes.
j.   **"Business Days"** means Monday through Friday, excluding Holidays.
k.   **"Buyer Protection Program"** means the PayPal Buyer Complaint Policy, PayPal Buyer Protection Policy, Buyer Protection for eBay Express, Extended Buyer Protection with PayPal Credit and eBay Standard Purchase Protection Program all as further described in section 13 of this Agreement.
l.   **"Card Funded Payment"** means a payment that is fully or partially funded through a credit card, debit card, PayPal Pay Later or Buyer Credit.
m.   **"Card Processing Agreement"** means the agreement that commercial entities are required to enter into directly with PayPal's payment processor(s).
n.   **"Chargeback"** means a request that a buyer directly with his or her credit card company or credit card issuing bank to invalidate a payment.
o.   **"Claim"** means a request for reimbursement under a Buyer Protection Program.
p.   **"Confirmed Address"** means an address that has been reviewed by PayPal and found highly likely to be that of the User to which it is associated.
q.   **"Customer Service"** is PayPal's customer support which can be accessed online through the PayPal Help Center at any time, or by calling (402) 935-2050 from 6 AM to midnight Central Time.
r.   **"Days"** means calendar days.
s.   **"Default Funding Sources"** means the order in which PayPal uses your Funding Sources to fund a transaction if you do not select a Preferred Funding Source.
t.   **"Dispute"** means a dispute filed by a User (buyer) in the Online Resolution Center.
u.   **"eBay"** means eBay Group Inc. **"eBay Gift Card"** means an eBay branded physical gift card that is issued by PayPal. **"eCheck"** means a payment funded from a sender's bank account that is held pending and not received by the recipient until it clears. When you send money using eCheck it will usually be held pending for 3-4 Business Days. The amount of time that it is held pending will increase if the payment is sent from a bank account outside the United States.
v.   **"Fees"** means those amounts stated in section 8 of this Agreement.
w.   **"Funding Source"** means the payment method used to fund a transaction. The following payment methods may be used to fund a transaction: Balance, Instant Transfer, eCheck, Buyer Credit, PayPal Pay Later, credit card, debit card, eBay Gift Card and Redemption Codes.
x.   **"Holidays"** means New Year's Day (January 1), Birthday of Martin Luther King, Jr. (the third Monday in January), Washington's Birthday (the third Monday in February), Memorial Day (the last Monday in May), Independence Day (July 4), Labor Day (the first Monday in September), Columbus Day (the second Monday in October), Veterans Day (November 11), Thanksgiving Day (the fourth Thursday in November) and Christmas Day (December 25).If a Holiday falls on a Saturday, PayPal shall observe the Holiday on the prior Friday. If the Holiday falls on a Sunday, PayPal shall observe the Holiday on the following Monday.
y.   **"Information"** means any confidential and/or personally identifiable information or other information related to an Account or User, including but not limited to the following: name, email address, billing/shipping address, phone number and financial information.
z.   **"Instant Transfer"** means a payment funded from the sender's bank account in which PayPal credits the recipient instantly.
aa.  **"Mass Payments"** means the ability to send multiple payments at the same time.

EXHIBIT C                                    Page 50

ab. **"Merchant Processing Delay"** means a delay between the time you Authorize a payment and the merchant processes your payment.
ac. **"Money Market Fund"** means the PayPal Money Market Fund offered to U.S. Users as an option for investing Balances in their PayPal Account, as further described in the prospectus.
ad. **"Payment Review"** means the process described in section 4 of this Agreement.
ae. **"PayPal," "we," "us"** or **"our"** means PayPal, Inc. and its subsidiaries and affiliates.
af. **"PayPal Debit Card"** means a PayPal branded debit card that is accepted anywhere that accepts MasterCard.
ag. **"PayPal Buyer Credit"** a personal credit account exclusively for PayPal Users.
ah. **"PayPal Credit"** means PayPal Buyer Credit, PayPal Pay Later or PayPal Credit Card.
ai. **"PayPal Credit Card"** means PayPal Plus Credit Card or eBay MasterCard.
aj. **"PayPal Mobile"** means a Service that allows you to send and receive payments through your mobile phone.
ak. **"PayPal Pay Later"** means a personal transactional credit account exclusively for PayPal users.
al. **"PayPal Plug-In"** (formerly named "Virtual Debit Card") means a PayPal service that provides you with a secure card that is a unique 16-digit number, an expiration date and a card security code that you can use to make a purchase from your Account on any website that accepts MasterCard
am. **"Personal Account"** means an Account used for non-business purposes and used primarily for personal, family, or household purposes.
an. **"Policy"** or **"Policies"** means any Policy or other agreement between you and PayPal that you entered into on the PayPal website, or in connection with your use of the Services.
ao. **"Pooled Accounts"** means Accounts at one or more FDIC-insured banks in which PayPal will place User Balances that are not invested in the Money Market Fund.
ap. **"Preferred Funding Source"** means a Funding Source that you select to fund a payment instead of using the Default Funding Sources.
aq. **"Recurring Payments"** means a payment in which you provide an advance Authorization to a merchant to charge your PayPal Account directly on a one-time, regular, or sporadic basis in accordance with your agreement with the merchant. Recurring Payments are sometimes called "subscriptions" or "preapproved payments".
ar. **"Redemption Code"** means the electronic code needed to obtain the benefit of gift certificates, eBay Anything Points, or other promotional coupons. eBay Gift Cards are not Redemption Codes.
as. **"Reserve"** means a percentage of the funds received into your Account that we hold in order to protect against the risk of Reversals, Chargebacks, Claims or any other liability related to your Account and/or use of the Services.
at. **"Restricted Activities"** means those activities described in section 9 of this Agreement.
au. **"Reversal"** means a payment that you received has been removed from your Balance based on a request that an account holder filed directly with his or her bank, or directly with PayPal (for a fraudulent transaction) to invalidate a payment, or because PayPal believes it is a fraudulent payment.
av. **"seller"** and **"merchant"** are used interchangeably and mean a User who is selling goods and/or services and using the Services to receive payment.
aw. **"Send Money"** means your ability to send money though the Service.
ax. **"Service"** means all payment services and related products available through www.paypal.com.
ay. **"Significantly Not as Described"** means the definition provided in section 13.11 of this Agreement.
az. **"Substantial Change"** means a change to the terms of this Agreement that reduces your rights or increases your responsibilities.
ba. **"Transaction Details Page"** means the page on the PayPal website titled "Transaction Details" that displays information about the transaction. This page is accessible from the "Details" link on the "overview" and "History" subtabs of the "My Account" tab on the PayPal website.
bb. **"Verified"** means that you have completed our verification process to establish your identity with PayPal. Verification does not constitute an endorsement of a User, or guarantee a User's business practices.
bc. **"Viewable Online Proof of Delivery"** means documentation that can be viewed online at the Approved Shipper's website and includes the address to which the package was delivered.
bd. **"Viewable Online Signature Confirmation"** means documentation that can be viewed online at the Approved Shipper's website and includes the signature of the person who received the package.
be. **"User," "you"** or **"your"** means you and any other person or entity using the Service.

About | Accounts | Fees | Privacy | Security Center | Contact Us | Legal Agreements | Developers | Jobs | Merchant Services | Mobile | Plus Card | Referrals | Shops | Mass Pay | Site Feedback

[+]

Copyright © 1999-2008 PayPal. All rights reserved.
Information about FDIC pass-through insurance

**Exhibit D**



**Exhibit E**



**(213) 628-6338**
1545 Wilshire Blvd., 311
Los Angeles, CA 90017
www.janneyandjanney.com
IRS 95-3267524

**INVOICE DATE:** 05/13/2008                    **INVOICE NUMBER:** 1278712-1

| | |
|---|---|
| Client No. 10713 | **Route#: LA-5** |
| Client J. ANDREW COOMBS | **Server#: 29** |
| Address 517 E. WILSON ST. #202 | |
| GLENDALE, CA 91206 | |
| Phone: (818) 500-3200   Fax: (818) 500-3201 | |
| Client File No.: | |
| Contact: JEREMY | |

Case No.: C081536JW
Court: USDC - NORTHERN DISTRICT - OAKLAND
Plaintiff: ADOBE
Defendant: JACKSON, ET AL
Servee: ALEX JACKSON

Documents:
    See Attached List

| DESCRIPTION | SERVICES | CHARGES |
|---|---|---|
| Served: ALEX JACKSON at 31324 VIA COLINAS ste. 114, WESTLAKE VILLAGE, CA 91362. On 05/05/2008 11:07 am<br><br>UNABLE TO EFFECT SERVICE AT ADD: 3133 E. HILLCREST DRIVE. BAD ADDRESS - PER ELAINE POLLOCK - HAS LIVED HER FOR 8 YEARS - DOES NOT KNOW DEFENDANT...UNABLE TO EFFECT SERVICE AT ADD: 5332 MARK CT. BAD ADDRESS - PER ANGELA STETSON - HAS LIVED HERE FOR THE PAST 5 YEARS...SUB-SERVED AT ABOVE GIVEN ADDRESS... | Service of Process<br>Due Diligence<br>Non-Service<br>Non-Service | 52.00<br>15.00<br>52.00<br>52.00 |
| | **INVOICE TOTAL** | **$ 171.00** |

User: kiam                                                                          Order#: 1278712-1/InvPro

**Exhibit F**

eBay User ID History                                              Page 1 of 1

**ebaY**®            Hi,            (Sign out)

Buy | Sell | My eBay | Community | Help

Site Map

| | All Categories | | Search | Advanced Search |

Categories ▼    Motors    Express    Stores

eBay Security & Resolution Center

## eBay Member User ID History

The box below contains the User IDs that this member has used on eBay.

**This person's no longer a registered eBay user.**

| User ID | Effective Date | End Date |
|---------|---------------|----------|
| itsawayoflife | Sep-12-05 | Not a registered user |

About eBay | Announcements | Security Center | eBay Toolbar | Policies | Government Relations | Site Map | Help

Copyright © 1995-2008 eBay Inc. All Rights Reserved. Designated trademarks and brands are the property of their respective owners. Use of this Web site constitutes acceptance of the eBay User Agreement and Privacy Policy.

eBay official time
.

**Exhibit G**



| United States |  |

## Google Terms of Service

**Welcome to Google!**

**1. Your relationship with Google**

1.1 Your use of Google's products, software, services and web sites (referred to collectively as the "Services" in this document and excluding any services provided to you by Google under a separate written agreement) is subject to the terms of a legal agreement between you and Google. "Google" means Google Inc., whose principal place of business is at 1600 Amphitheatre Parkway, Mountain View, CA 94043, United States. This document explains how the agreement is made up, and sets out some of the terms of that agreement.

1.2 Unless otherwise agreed in writing with Google, your agreement with Google will always include, at a minimum, the terms and conditions set out in this document. These are referred to below as the "Universal Terms".

1.3 Your agreement with Google will also include the terms of any Legal Notices applicable to the Services, in addition to the Universal Terms. All of these are referred to below as the "Additional Terms". Where Additional Terms apply to a Service, these will be accessible for you to read either within, or through your use of, that Service.

1.4 The Universal Terms, together with the Additional Terms, form a legally binding agreement between you and Google in relation to your use of the Services. It is important that you take the time to read them carefully. Collectively, this legal agreement is referred to below as the "Terms".

1.5 If there is any contradiction between what the Additional Terms say and what the Universal Terms say, then the Additional Terms shall take precedence in relation to that Service.

**2. Accepting the Terms**

2.1 In order to use the Services, you must first agree to the Terms. You may not use the Services if you do not accept the Terms.

2.2 You can accept the Terms by:

(A) clicking to accept or agree to the Terms, where this option is made available to you by Google in the user interface for any Service; or

(B) by actually using the Services. In this case, you understand and agree that Google will treat your use

**Sidebar navigation:**

Home

About Google

Privacy Highlights

Privacy Policy

Privacy FAQ

**Terms of Service**

Terms of Service
Highlights

More privacy info:
- Desktop
- Gmail
- Groups
- Orkut
- Personalized Homepage
- Personalized Search
- Store
- Talk
- Toolbar
- Web Accelerator

*Find on this site:*

[ Search ]

of the Services as acceptance of the Terms from that point onwards.

2.3 You may not use the Services and may not accept the Terms if (a) you are not of legal age to form a binding contract with Google, or (b) you are a person barred from receiving the Services under the laws of the United States or other countries including the country in which you are resident or from which you use the Services.

2.4 Before you continue, you should print off or save a local copy of the Universal Terms for your records.

## 3. Language of the Terms

3.1 Where Google has provided you with a translation of the English language version of the Terms, then you agree that the translation is provided for your convenience only and that the English language versions of the Terms will govern your relationship with Google.

3.2 If there is any contradiction between what the English language version of the Terms says and what a translation says, then the English language version shall take precedence.

## 4. Provision of the Services by Google

4.1 Google has subsidiaries and affiliated legal entities around the world ("Subsidiaries and Affiliates"). Sometimes, these companies will be providing the Services to you on behalf of Google itself. You acknowledge and agree that Subsidiaries and Affiliates will be entitled to provide the Services to you.

4.2 Google is constantly innovating in order to provide the best possible experience for its users. You acknowledge and agree that the form and nature of the Services which Google provides may change from time to time without prior notice to you.

4.3 As part of this continuing innovation, you acknowledge and agree that Google may stop (permanently or temporarily) providing the Services (or any features within the Services) to you or to users generally at Google's sole discretion, without prior notice to you. You may stop using the Services at any time. You do not need to specifically inform Google when you stop using the Services.

4.4 You acknowledge and agree that if Google disables access to your account, you may be prevented from accessing the Services, your account details or any files or other content which is contained in your account.

4.5 You acknowledge and agree that while Google may not currently have set a fixed upper limit on the number of transmissions you may send or receive through the Services or on the amount of storage space used for the provision of any Service, such fixed upper limits may be set by Google at any time, at Google's discretion.

## 5. Use of the Services by you

5.1 In order to access certain Services, you may be required to provide information about yourself (such as identification or contact details) as part of the registration process for the Service, or as part of your continued use of the Services. You agree that any registration information you give to Google will always be accurate, correct and up to date.

5.2 You agree to use the Services only for purposes that are permitted by (a) the Terms and (b) any applicable law, regulation or generally accepted practices or guidelines in the relevant jurisdictions (including any laws regarding the export of data or software to and from the United States or other relevant countries).

5.3 You agree not to access (or attempt to access) any of the Services by any means other than through the interface that is provided by Google, unless you have been specifically allowed to do so in a separate agreement with Google. You specifically agree not to access (or attempt to access) any of the Services through any automated means (including use of scripts or web crawlers) and shall ensure that you comply with the instructions set out in any robots.txt file present on the Services.

5.4 You agree that you will not engage in any activity that interferes with or disrupts the Services (or the servers and networks which are connected to the Services).

5.5 Unless you have been specifically permitted to do so in a separate agreement with Google, you agree that you will not reproduce, duplicate, copy, sell, trade or resell the Services for any purpose.

5.6 You agree that you are solely responsible for (and that Google has no responsibility to you or to any third party for) any breach of your obligations under the Terms and for the consequences (including any loss or damage which Google may suffer) of any such breach.

## 6. Your passwords and account security

6.1 You agree and understand that you are responsible for maintaining the confidentiality of passwords associated with any account you use to access the Services.

6.2 Accordingly, you agree that you will be solely responsible to Google for all activities that occur under your account.

6.3 If you become aware of any unauthorized use of your password or of your account, you agree to notify Google immediately at http://www.google.com/support/accounts/bin/answer.py?answer=48601.

## 7. Privacy and your personal information

7.1 For information about Google's data protection practices, please read Google's privacy policy at http://www.google.com/privacy.html. This policy explains how Google treats your personal information, and protects your privacy, when you use the Services.

7.2 You agree to the use of your data in accordance with Google's privacy policies.

## 8. Content in the Services

8.1 You understand that all information (such as data files, written text, computer software, music, audio files or other sounds, photographs, videos or other images) which you may have access to as part of, or through your use of, the Services are the sole responsibility of the person from which such content originated. All such information is referred to below as the "Content".

8.2 You should be aware that Content presented to you as part of the Services, including but not limited to advertisements in the Services and sponsored Content within the Services may be protected by intellectual property rights which are owned by the sponsors or advertisers who provide that Content to Google (or by other persons or companies on their behalf). You may not modify, rent, lease, loan, sell, distribute or create derivative works based on this Content (either in whole or in part) unless you have been specifically told that you may do so by Google or by the owners of that Content, in a separate agreement.

8.3 Google reserves the right (but shall have no obligation) to pre-screen, review, flag, filter, modify, refuse or remove any or all Content from any Service. For some of the Services, Google may provide tools to filter out explicit sexual content. These tools include the SafeSearch preference settings (see http://www.google.com/help/customize.html#safe). In addition, there are commercially available services and software to limit access to material that you may find objectionable.

8.4 You understand that by using the Services you may be exposed to Content that you may find offensive, indecent or objectionable and that, in this respect, you use the Services at your own risk.

8.5 You agree that you are solely responsible for (and that Google has no responsibility to you or to any third party for) any Content that you create, transmit or display while using the Services and for the consequences of your actions (including any loss or damage which Google may suffer) by doing so.

## 9. Proprietary rights

9.1 You acknowledge and agree that Google (or Google's licensors) own all legal right, title and interest in and to the Services, including any intellectual property rights which subsist in the Services (whether those rights happen to be registered or not, and wherever in the world those rights may exist). You further acknowledge that the Services may contain information which is designated confidential by Google and that you shall not disclose

such information without Google's prior written consent.

9.2 Unless you have agreed otherwise in writing with Google, nothing in the Terms gives you a right to use any of Google's trade names, trade marks, service marks, logos, domain names, and other distinctive brand features.

9.3 If you have been given an explicit right to use any of these brand features in a separate written agreement with Google, then you agree that your use of such features shall be in compliance with that agreement, any applicable provisions of the Terms, and Google's brand feature use guidelines as updated from time to time. These guidelines can be viewed online at http://www.google.com/permissions/guidelines.html (or such other URL as Google may provide for this purpose from time to time).

9.4 Other than the limited license set forth in Section 11, Google acknowledges and agrees that it obtains no right, title or interest from you (or your licensors) under these Terms in or to any Content that you submit, post, transmit or display on, or through, the Services, including any intellectual property rights which subsist in that Content (whether those rights happen to be registered or not, and wherever in the world those rights may exist). Unless you have agreed otherwise in writing with Google, you agree that you are responsible for protecting and enforcing those rights and that Google has no obligation to do so on your behalf.

9.5 You agree that you shall not remove, obscure, or alter any proprietary rights notices (including copyright and trade mark notices) which may be affixed to or contained within the Services.

9.6 Unless you have been expressly authorized to do so in writing by Google, you agree that in using the Services, you will not use any trade mark, service mark, trade name, logo of any company or organization in a way that is likely or intended to cause confusion about the owner or authorized user of such marks, names or logos.

## 10. License from Google

10.1 Google gives you a personal, worldwide, royalty-free, non-assignable and non-exclusive licence to use the software provided to you by Google as part of the Services as provided to you by Google (referred to as the "Software" below). This licence is for the sole purpose of enabling you to use and enjoy the benefit of the Services as provided by Google, in the manner permitted by the Terms.

10.2 You may not (and you may not permit anyone else to) copy, modify, create a derivative work of, reverse engineer, decompile or otherwise attempt to extract the source code of the Software or any part thereof, unless this is expressly permitted or required by law, or unless you have been specifically told that you may do so by Google, in writing.

10.3 Unless Google has given you specific written permission to do so, you may not assign (or grant a sub-licence of) your rights to

use the Software, grant a security interest in or over your rights to use the Software, or otherwise transfer any part of your rights to use the Software.

## 11. Content licence from you

11.1 You retain copyright and any other rights you already hold in Content which you submit, post or display on or through, the Services. By submitting, posting or displaying the content you give Google a perpetual, irrevocable, worldwide, royalty-free, and non-exclusive licence to reproduce, adapt, modify, translate, publish, publicly perform, publicly display and distribute any Content which you submit, post or display on or through, the Services. This licence is for the sole purpose of enabling Google to display, distribute and promote the Services and may be revoked for certain Services as defined in the Additional Terms of those Services.

11.2 You agree that this licence includes a right for Google to make such Content available to other companies, organizations or individuals with whom Google has relationships for the provision of syndicated services, and to use such Content in connection with the provision of those services.

11.3 You understand that Google, in performing the required technical steps to provide the Services to our users, may (a) transmit or distribute your Content over various public networks and in various media; and (b) make such changes to your Content as are necessary to conform and adapt that Content to the technical requirements of connecting networks, devices, services or media. You agree that this licence shall permit Google to take these actions.

11.4 You confirm and warrant to Google that you have all the rights, power and authority necessary to grant the above licence.

## 12. Software updates

12.1 The Software which you use may automatically download and install updates from time to time from Google. These updates are designed to improve, enhance and further develop the Services and may take the form of bug fixes, enhanced functions, new software modules and completely new versions. You agree to receive such updates (and permit Google to deliver these to you) as part of your use of the Services.

## 13. Ending your relationship with Google

13.1 The Terms will continue to apply until terminated by either you or Google as set out below.

13.2 If you want to terminate your legal agreement with Google, you may do so by (a) notifying Google at any time and (b) closing your accounts for all of the Services which you use, where Google has made this option available to you. Your notice should be sent, in writing, to Google's address which is set out at the beginning of these Terms.

13.3 Google may at any time, terminate its legal agreement with you if:

> (A) you have breached any provision of the Terms (or have acted in manner which clearly shows that you do not intend to, or are unable to comply with the provisions of the Terms); or

> (B) Google is required to do so by law (for example, where the provision of the Services to you is, or becomes, unlawful); or

> (C) the partner with whom Google offered the Services to you has terminated its relationship with Google or ceased to offer the Services to you; or

> (D) Google is transitioning to no longer providing the Services to users in the country in which you are resident or from which you use the service; or

> (E) the provision of the Services to you by Google is, in Google's opinion, no longer commercially viable.

13.4 Nothing in this Section shall affect Google's rights regarding provision of Services under Section 4 of the Terms.

13.5 When these Terms come to an end, all of the legal rights, obligations and liabilities that you and Google have benefited from, been subject to (or which have accrued over time whilst the Terms have been in force) or which are expressed to continue indefinitely, shall be unaffected by this cessation, and the provisions of paragraph 20.7 shall continue to apply to such rights, obligations and liabilities indefinitely.

## 14. EXCLUSION OF WARRANTIES

14.1 NOTHING IN THESE TERMS, INCLUDING SECTIONS 14 AND 15, SHALL EXCLUDE OR LIMIT GOOGLE'S WARRANTY OR LIABILITY FOR LOSSES WHICH MAY NOT BE LAWFULLY EXCLUDED OR LIMITED BY APPLICABLE LAW. SOME JURISDICTIONS DO NOT ALLOW THE EXCLUSION OF CERTAIN WARRANTIES OR CONDITIONS OR THE LIMITATION OR EXCLUSION OF LIABILITY FOR LOSS OR DAMAGE CAUSED BY NEGLIGENCE, BREACH OF CONTRACT OR BREACH OF IMPLIED TERMS, OR INCIDENTAL OR CONSEQUENTIAL DAMAGES. ACCORDINGLY, ONLY THE LIMITATIONS WHICH ARE LAWFUL IN YOUR JURISDICTION WILL APPLY TO YOU AND OUR LIABILITY WILL BE LIMITED TO THE MAXIMUM EXTENT PERMITTED BY LAW.

14.2 YOU EXPRESSLY UNDERSTAND AND AGREE THAT YOUR USE OF THE SERVICES IS AT YOUR SOLE RISK AND THAT THE SERVICES ARE PROVIDED "AS IS" AND "AS AVAILABLE."

14.3 IN PARTICULAR, GOOGLE, ITS SUBSIDIARIES AND AFFILIATES, AND ITS LICENSORS DO NOT REPRESENT OR WARRANT TO YOU THAT:

(A) YOUR USE OF THE SERVICES WILL MEET YOUR REQUIREMENTS,

(B) YOUR USE OF THE SERVICES WILL BE UNINTERRUPTED, TIMELY, SECURE OR FREE FROM ERROR,

(C) ANY INFORMATION OBTAINED BY YOU AS A RESULT OF YOUR USE OF THE SERVICES WILL BE ACCURATE OR RELIABLE, AND

(D) THAT DEFECTS IN THE OPERATION OR FUNCTIONALITY OF ANY SOFTWARE PROVIDED TO YOU AS PART OF THE SERVICES WILL BE CORRECTED.

14.4 ANY MATERIAL DOWNLOADED OR OTHERWISE OBTAINED THROUGH THE USE OF THE SERVICES IS DONE AT YOUR OWN DISCRETION AND RISK AND THAT YOU WILL BE SOLELY RESPONSIBLE FOR ANY DAMAGE TO YOUR COMPUTER SYSTEM OR OTHER DEVICE OR LOSS OF DATA THAT RESULTS FROM THE DOWNLOAD OF ANY SUCH MATERIAL.

14.5 NO ADVICE OR INFORMATION, WHETHER ORAL OR WRITTEN, OBTAINED BY YOU FROM GOOGLE OR THROUGH OR FROM THE SERVICES SHALL CREATE ANY WARRANTY NOT EXPRESSLY STATED IN THE TERMS.

14.6 GOOGLE FURTHER EXPRESSLY DISCLAIMS ALL WARRANTIES AND CONDITIONS OF ANY KIND, WHETHER EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO THE IMPLIED WARRANTIES AND CONDITIONS OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE AND NON-INFRINGEMENT.

## 15. LIMITATION OF LIABILITY

15.1 SUBJECT TO OVERALL PROVISION IN PARAGRAPH 14.1 ABOVE, YOU EXPRESSLY UNDERSTAND AND AGREE THAT GOOGLE, ITS SUBSIDIARIES AND AFFILIATES, AND ITS LICENSORS SHALL NOT BE LIABLE TO YOU FOR:

(A) ANY DIRECT, INDIRECT, INCIDENTAL, SPECIAL CONSEQUENTIAL OR EXEMPLARY DAMAGES WHICH MAY BE INCURRED BY YOU, HOWEVER CAUSED AND UNDER ANY THEORY OF LIABILITY.. THIS SHALL INCLUDE, BUT NOT BE LIMITED TO, ANY LOSS OF PROFIT (WHETHER INCURRED DIRECTLY OR INDIRECTLY), ANY LOSS OF GOODWILL OR BUSINESS REPUTATION, ANY LOSS OF DATA SUFFERED, COST OF PROCUREMENT OF SUBSTITUTE GOODS OR SERVICES, OR OTHER INTANGIBLE LOSS;

(B) ANY LOSS OR DAMAGE WHICH MAY BE INCURRED BY YOU, INCLUDING BUT NOT

LIMITED TO LOSS OR DAMAGE AS A RESULT OF:

> (I) ANY RELIANCE PLACED BY YOU ON THE COMPLETENESS, ACCURACY OR EXISTENCE OF ANY ADVERTISING, OR AS A RESULT OF ANY RELATIONSHIP OR TRANSACTION BETWEEN YOU AND ANY ADVERTISER OR SPONSOR WHOSE ADVERTISING APPEARS ON THE SERVICES;
>
> (II) ANY CHANGES WHICH GOOGLE MAY MAKE TO THE SERVICES, OR FOR ANY PERMANENT OR TEMPORARY CESSATION IN THE PROVISION OF THE SERVICES (OR ANY FEATURES WITHIN THE SERVICES);
>
> (III) THE DELETION OF, CORRUPTION OF, OR FAILURE TO STORE, ANY CONTENT AND OTHER COMMUNICATIONS DATA MAINTAINED OR TRANSMITTED BY OR THROUGH YOUR USE OF THE SERVICES;
>
> (III) YOUR FAILURE TO PROVIDE GOOGLE WITH ACCURATE ACCOUNT INFORMATION;
>
> (IV) YOUR FAILURE TO KEEP YOUR PASSWORD OR ACCOUNT DETAILS SECURE AND CONFIDENTIAL;

15.2 THE LIMITATIONS ON GOOGLE'S LIABILITY TO YOU IN PARAGRAPH 15.1 ABOVE SHALL APPLY WHETHER OR NOT GOOGLE HAS BEEN ADVISED OF OR SHOULD HAVE BEEN AWARE OF THE POSSIBILITY OF ANY SUCH LOSSES ARISING.

### 16. Copyright and trade mark policies

16.1 It is Google's policy to respond to notices of alleged copyright infringement that comply with applicable international intellectual property law (including, in the United States, the Digital Millennium Copyright Act) and to terminating the accounts of repeat infringers. Details of Google's policy can be found at http://www.google.com/dmca.html.

16.2 Google operates a trade mark complaints procedure in respect of Google's advertising business, details of which can be found at http://www.google.com/tm_complaint.html.

### 17. Advertisements

17.1 Some of the Services are supported by advertising revenue and may display advertisements and promotions. These advertisements may be targeted to the content of information stored on the Services, queries made through the Services or other information.

17.2 The manner, mode and extent of advertising by Google on the Services are subject to change without specific notice to you.

17.3 In consideration for Google granting you access to and use of the Services, you agree that Google may place such advertising on the Services.

## 18. Other content

18.1 The Services may include hyperlinks to other web sites or content or resources. Google may have no control over any web sites or resources which are provided by companies or persons other than Google.

18.2 You acknowledge and agree that Google is not responsible for the availability of any such external sites or resources, and does not endorse any advertising, products or other materials on or available from such web sites or resources.

18.3 You acknowledge and agree that Google is not liable for any loss or damage which may be incurred by you as a result of the availability of those external sites or resources, or as a result of any reliance placed by you on the completeness, accuracy or existence of any advertising, products or other materials on, or available from, such web sites or resources.

## 19. Changes to the Terms

19.1 Google may make changes to the Universal Terms or Additional Terms from time to time. When these changes are made, Google will make a new copy of the Universal Terms available at http://www.google.com/accounts/TOS?hl=en and any new Additional Terms will be made available to you from within, or through, the affected Services.

19.2 You understand and agree that if you use the Services after the date on which the Universal Terms or Additional Terms have changed, Google will treat your use as acceptance of the updated Universal Terms or Additional Terms.

## 20. General legal terms

20.1 Sometimes when you use the Services, you may (as a result of, or through your use of the Services) use a service or download a piece of software, or purchase goods, which are provided by another person or company. Your use of these other services, software or goods may be subject to separate terms between you and the company or person concerned. If so, the Terms do not affect your legal relationship with these other companies or individuals.

20.2 The Terms constitute the whole legal agreement between you and Google and govern your use of the Services (but excluding any services which Google may provide to you under a separate written agreement), and completely replace any prior agreements between you and Google in relation to the Services.

20.3 You agree that Google may provide you with notices, including those regarding changes to the Terms, by email, regular mail, or postings on the Services.

20.4 You agree that if Google does not exercise or enforce any legal right or remedy which is contained in the Terms (or which Google has the benefit of under any applicable law), this will not be taken to be a formal waiver of Google's rights and that those rights or remedies will still be available to Google.

20.5 If any court of law, having the jurisdiction to decide on this matter, rules that any provision of these Terms is invalid, then that provision will be removed from the Terms without affecting the rest of the Terms. The remaining provisions of the Terms will continue to be valid and enforceable.

20.6 You acknowledge and agree that each member of the group of companies of which Google is the parent shall be third party beneficiaries to the Terms and that such other companies shall be entitled to directly enforce, and rely upon, any provision of the Terms which confers a benefit on (or rights in favor of) them. Other than this, no other person or company shall be third party beneficiaries to the Terms.

20.7 The Terms, and your relationship with Google under the Terms, shall be governed by the laws of the State of California without regard to its conflict of laws provisions. You and Google agree to submit to the exclusive jurisdiction of the courts located within the county of Santa Clara, California to resolve any legal matter arising from the Terms. Notwithstanding this, you agree that Google shall still be allowed to apply for injunctive remedies (or an equivalent type of urgent legal relief) in any jurisdiction.

April 16, 2007



©2007 Google - Home - About Google - Privacy Policy - Terms of Service

J. Andrew Coombs (SBN 123881)
andy@coombspc.com
Nicole L. Drey (SBN 250235)
J. Andrew Coombs, A P. C.
517 East Wilson Avenue, Suite 22
Glendale, California 91206
Telephone: (818) 500-3200
Facsimile: (818) 500-3201

Attorneys for Plaintiff
Adobe Systems Incorporated

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA (SAN JOSE DIVISION)

| | | |
|---|---|---|
| Adobe Systems Incorporated, | ) | Case No. C08-1535 JW |
| Plaintiff, | ) ) | [PROPOSED] ORDER GRANTING PLAINTIFFS' APPLICATION FOR |
| v. | ) ) | LEAVE TO TAKE IMMEDIATE DISCOVERY PRIOR TO RULE 26(F) |
| Alex Jackson, and Does 1 – 10, inclusive, | ) ) | CONFERENCE |
| Defendants. | ) ) ) | |

The Court has read and considered all papers filed in connection with Plaintiff's *Ex Parte* Application for Leave to Take Immediate Discovery Prior to Rule 26(f) Conference ("the Application").

IT IS HEREBY ORDERED that the Application is granted.

IT IS FURTHER ORDERED that Plaintiff may serve immediate discovery on PayPal, Inc. ("PayPal"), eBay, Inc. ("eBay"), and Google, Inc. ("Google") by serving Fed. R. Civ. P. 45 subpoenas, which seek information sufficient to conclusively identify and locate Alex Jackson ("Defendant") doing business as "itsawayoflife," whose email address is semisub@gmail.com, including names, addresses, telephone numbers, identity of the Defendant's financial institution(s), and other email address(es) for the Defendant.

If PayPal, eBay, or Google wish to file a motion to quash the subpoenas or to serve objections, they must do so before the return date of the subpoenas, which shall be no less than

twenty-one (21) days from the date of service of the subpoenas. Among other things, PayPal, eBay or Google may use this time to notify the subscribers in question.

PayPal, eBay, and Google shall preserve any subpoenaed information or materials pending compliance with the subpoenas or resolution of any timely objection or motion to quash.

IT IS FURTHER ORDERED that Plaintiff must serve a copy of this order on PayPal, eBay, and Google when it serves the subpoenas.

IT IS FURTHER ORDERED that any information disclosed to Plaintiff in response to the Fed. R. Civ. P. 45 subpoenas may be used by Plaintiff solely for the purpose of protecting Plaintiff's rights under the Copyright Act.


Dated: _____    _____
                                   Magistrate Judge, United States District Court for the
                                   Northern District of California


Presented By:

J. Andrew Coombs
A Professional Corporation


By: _____
        J. Andrew Coombs
        Nicole L. Drey
Attorneys for Plaintiff
Adobe Systems Incorporated